IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **JORGE LUIS LEAL, #14448-025,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-01172-SMY |
| | ) |
| **LT. PINKERTON,** | ) |
| **C/O TOMMY,** | ) |
| **C/O CRAIG,** | ) |
| **SGT. CROWSON,** | ) |
| **C/O YINGLING,** | ) |
| **C/O ETHERTON,** | ) |
| **SGT. STARLING,** | ) |
| **NURSE REYNOLDS,** | ) |
| **SGT. ETHERTON,** | ) |
| **LT. HAVENS,** | ) |
| **CHIEF HUNTER,** | ) |
| **C/O CROMPTON,** | ) |
| **C/O NORTH,** | ) |
| **C/O FREEMAN,** | ) |
| **C/O GIBBS,** | ) |
| **C/O FOSTER,** | ) |
| **C/O ALLEN,** | ) |
| **C/O CREEK,** | ) |
| **and C/O BANDIT,** | ) |
| | ) |
| **Defendants.** | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Jorge Luis Leal filed this action under 42 U.S.C. § 1983 for alleged constitutional deprivations during his pretrial detention at Williamson County Jail. This case is now before the Court for screening of the First Amended Complaint (Doc. 20) under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous or malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. *Id*.

**First Amended Complaint**

Plaintiff makes the following allegations in the First Amended Complaint (Doc. 20, pp. 17-26): Plaintiff was detained at the Williamson County Jail from December 22, 2020 until June 30, 2022 while facing federal charges for internet-based crimes involving the enticement of a minor. Due to the pending charges, his lack of criminal history, and his mental state, Plaintiff was identified as an inmate in need of protective custody. *Id*. at 17.

Plaintiff first expressed fear for his safety from other inmates on December 22, 2020. C/O Tommy promised to relay his concerns to a supervisor and move him when COVID sanitation procedures were completed in another cell. However, no further action was taken. *Id*. at 18.

Plaintiff reiterated the concerns on December 30, 2020. C/O Craig assured him that action would be taken to transfer him before COVID-related lockdowns ended. Once again, no action was taken to protect him. *Id*.

Plaintiff filed a written request for protection from other inmates on January 7, 2021. Sergeant Crowson, C/O Yingling, and C/O Etherton told him that no immediate or "normal" action could be taken to separate him from the inmates who posed a threat to his safety. *Id*. at 19. However, Sergeant Crowson agreed to ask a supervisor if Plaintiff could provide "written or in person testimony" to the federal court about his safety risks to support his request for pretrial release. The sergeant failed to follow up on this request. *Id*.

Plaintiff filed another complaint on or around January 14, 2021. Sergeant Starling told Plaintiff to file his complaint with a day shift sergeant. *Id*.

At some point prior to July 15, 2021, Plaintiff was transferred into the Jail's protective custody unit. Around the same time, Nurse Reynolds approved Rex Summers as an inmate trustee, even though she knew about Summers' "keep separate order" from Plaintiff for past harassment

and threats. As a trustee, Summers had access to all areas of the Jail, including the protective custody unit. On July 15, 2021, Crowson, Bandit, Gibbs, and Etherton transferred all inmate trustees into the protective custody unit, where Summers and two other inmates attacked Plaintiff soon thereafter. *Id*. at 19-20.

Plaintiff sustained physical injuries that required prompt medical attention, including loose teeth, severe headaches, difficulty balancing, trouble focusing, and insomnia. *Id*. at 20. He also suffered psychological symptoms, including fear, stress, and anger. Plaintiff asked for treatment at an outside hospital, but Crowson and Reynolds both denied his request. The nurse did not examine him for injuries until 16 hours after the attack, and both denied his requests for pain medication for 24 hours after the assault. *Id*.

Crowson placed Plaintiff on lockdown from July 15, 2021, to July 20, 2021. The sergeant offered Plaintiff no reason for doing so. Plaintiff's placement on lockdown amounted to unfair punishment that unnecessarily increased his emotional distress. When he sought monetary compensation for his injuries on July 19-20, 2021, Etherton, Havens, and Pinkerton denied his requests. *Id*. at 21. Although Etherton admitted knowledge of the "keep separate order," Havens claimed that they were all unaware of the order when moving the inmate trustees into the same housing unit as Plaintiff. *Id*.

Plaintiff requested mental health treatment repeatedly between July 22, 2021 and August 3, 2021, but Havens and Pinkerton failed to ensure a prompt response or appropriate care. *Id*.

From August 1, 2021 until June 30, 2022, Hunter, Pinkerton, Havens, and Starling decided to house inmates who were in protective custody alongside inmates in medical and administrative segregation. This effectively punished Plaintiff by restricting his access to services and areas that

were available to inmates in the general population.  *Id*. at 21-22.  When Plaintiff requested access to other services or areas of the Jail, these defendants told Plaintiff that he could not access either without leaving protective custody.  *Id*. at 22.

Hunter, Pinkerton, and Havens supervised a shakedown of Plaintiff's cell by officers from the Illinois Department of Corrections on August 12, 2021.  The officers confiscated Plaintiff's legal property.  They took documents necessary to prepare Plaintiff's criminal defense.  From August 13, 2021 until September 2, 2021, Hunter, Pinkerton, Havens, and Starling punished the entire protective custody unit each time Plaintiff attempted to retrieve any legal documents that were confiscated during the shakedown.  *Id*. at 23.  Plaintiff attempted to file grievances about the issue, but these defendants either verbally denied them or falsely documented resolution of the issues.

On September 16, 2021, Havens denied a grievance stemming from the assault, blaming the assault on Plaintiff.  Pinkerton intercepted and obstructed a grievance on September 20, 2021.  Hunter, Crowson, Etherton, Havens, and Pinkerton all denied Plaintiff's request for free paper copies of his grievances from September 23, 2021 until October 1, 2021, saying electronic copies were sufficient unless he wished to pay for hard copies.  *Id*. at 23-24.  Sometime between October 21, 2021 and November 5, 2021, these defendants lost all records of his grievances while updating the electronic grievance system.  *Id*. at 24.

Crowson, Etherton, Havens, Pinkerton, and Hunter then placed Plaintiff on lockdown with no access to "essential services" from November 23, 2021 until December 8, 2021.  His lockdown stemmed from a baseless PREA claim.  Plaintiff spent fifteen days in isolation during this investigation and suffered increased symptoms of depression that included suicidal thoughts.  The charges were ultimately dismissed as unsubstantiated, but Plaintiff continued to suffer mental

4

distress. C/O Crompton failed to schedule Plaintiff for counseling. *Id*. at 24-25.

When Plaintiff took steps to file a lawsuit about these issues, North, Yingling, and Freeman retaliated against him by conducting an intrusive and prolonged shakedown of his cell. In the process, they read and scattered his legal documents. When Plaintiff complained, Hunter, Allen, North, and Havens determined that his complaint lacked credibility. *Id*. at 25.

Gibbs opened two pieces of legal mail outside of Plaintiff's presence on January 26, 2022. Hunter ignored Plaintiff's emergency grievance about the issue. *Id*. at 26. Foster opened and read Plaintiff's legal mail on February 6, 2022. Hunter, Creek, Etherton, and North subsequently denied Plaintiff's complaints about mail interference, saying he had no privacy rights in Jail. *Id*. at 26.

## Discussion

Based on Plaintiff's allegations, the Court discerns twenty (20) separate claims in the *pro se* First Amended Complaint (Doc. 20):

**Count 1:** Fourteenth Amendment claim against Tommy for denying or disregarding Plaintiff's request for protection on December 22, 2020.

**Count 2:** Fourteenth Amendment claim against Craig for denying or disregarding Plaintiff's request for protection on December 30, 2020.

**Count 3:** Fourteenth Amendment claim against Crowson, Yingling, and Etherton for denying or disregarding Plaintiff's request for protection on January 7, 2021.

**Count 4:** Fourteenth Amendment claim against Starling for denying or disregarding Plaintiff's request for protection on January 14, 2021.

**Count 5:** Fourteenth Amendment claim against Reynolds for subjecting Plaintiff to a serious risk of harm to his health or safety when she approved Inmate Summers as an inmate trustee while a "keep separate order" from Plaintiff was in effect sometime before July 15, 2021.

**Count 6:** Fourteenth Amendment claim against Crowson, Bandit, Gibbs, and Etherton for failing to protect Plaintiff from a serious risk of harm when they moved Inmate Summers into the Jail's protective custody unit on July 15, 2021, just before Inmate Summers and others attacked Plaintiff.

5

| | |
|---|---|
| **Count 7:** | Fourteenth Amendment claim against Crowson and Reynolds for delaying or denying Plaintiff adequate medical treatment for the injuries he sustained in the inmate attack on July 15, 2021. |
| **Count 8:** | Fourteenth Amendment claim against Crowson for punishing Plaintiff by placing him on lockdown without providing any reasons for doing so from July 15-20, 2021. |
| **Count 9:** | Fourteenth Amendment claim against Etherton, Havens, and Pinkerton for denying Plaintiff's request for money damages on July 19-20, 2021. |
| **Count 10:** | Fourteenth Amendment claim against Havens and Pinkerton for denying Plaintiff's requests for mental health care from July 22 until August 3, 2021. |
| **Count 11:** | Fourteenth Amendment claim against Hunter, Pinkerton, Havens, and Starling for housing protective custody inmates alongside inmates in medical and administrative segregation and denying Plaintiff access to essential services or programs from August 1, 2021 until June 30, 2022. |
| **Count 12:** | First and/or Fourteenth Amendment claim against Hunter, Pinkerton, and Havens for interfering with Plaintiff's access to the courts by confiscating his legal documents during a cell shakedown on August 12, 2021. |
| **Count 13:** | First and/or Fourteenth Amendment claim against Hunter, Pinkerton, Havens, and Starling for punishing the entire housing unit when an inmate attempted to retrieve legal documents from August 13 to September 2, 2021. |
| **Count 14:** | Fourteenth Amendment claim against Hunter, Crowson, Etherton, Havens, and Pinkerton for mishandling Plaintiff's grievances from September 16 until November 5, 2021. |
| **Count 15:** | Fourteenth Amendment claim against Crowson, Etherton, Havens, Pinkerton, and Hunter for placing Plaintiff on lockdown with no access to essential services while investigating a PREA claim against him from November 23 until December 8, 2021. |
| **Count 16**: | Fourteenth Amendment claim against Crompton for denying Plaintiff mental health treatment necessitated by the PREA investigation from November 23 until December 8, 2021. |
| **Count 17:** | First Amendment claim against North, Yingling, and Freeman for retaliating against Plaintiff for filing a lawsuit by conducting a shakedown of his cell in December 2021 or January 2022. |
| **Count 18:** | Fourteenth Amendment claim against Hunter, Allen, North, and Havens for |

>        denying Plaintiff's grievance about the shakedown.
>
> **Count 19:**    First and/or Fourteenth Amendment claim against Gibbs for opening two pieces of mail outside of Plaintiff's presence on January 26, 2022.
>
> **Count 20:**    Fourteenth Amendment claim against Hunter, Creek, Etherton, and North for denying Plaintiff's related grievance about mail interference that occurred on January 26, 2022.

**Any other claim that is mentioned in the First Amended Complaint but not addressed herein is considered dismissed without prejudice as inadequately pled under *Twombly*.**[1]

## Severance/Dismissal: Counts 11-20

Rule 20(a)(2) permits a plaintiff to join defendants in a single action, if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to them all will arise in the action. FED. R. CIV. P. 20(a)(2). When faced with misjoinder, Rule 21 grants district courts broad discretion to dismiss a party or sever any claim, at any time, on just terms. *Owens v. Hinsley*, 635 F.3d 950, 952 (7th Cir. 2011) (citing FED. R. CIV. P. 21). Even if claims are eligible for joinder under Rule 20, a court may separate the claims into distinct suits. *Dorsey*, 55 F.4th at 1103. Thus, before screening any claims under 28 U.S.C. § 1915A, the Court must determine whether joinder is proper. *Dorsey v. Varga*, 55 F.4th 1094, 1103 (7th Cir. 2022); *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007).

Counts 1-10 arise from Plaintiff's claim that Defendants failed to protect him from a serious risk of harm posed by other inmates at the Jail and denied him treatment for injuries sustained in an inmate attack. These claims involve the same defendants, events, and/or legal theories. They also represent the "core claims" in this case. Therefore, Counts 1-10 are properly

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

joined herein and will proceed together, subject to § 1915A review, against Defendants Tommy, Craig, Crowson, Yingling, Etherton, Starling, Reynolds, Bandit, Gibbs, Havens, and Pinkerton.

Counts 11-20 arise from separate transactions and occurrences and can be divided into at least two factually distinct groups. Counts 11-14 involve claims for interference with Plaintiff's grievances and access to the courts. Counts 15-20 arise from a PREA investigation against Plaintiff. These claims are factually and legally unrelated to the core claims and each other. As such, the Court deems it appropriate to divide them into two additional lawsuits:

**Severed Case 1:** Counts 11 through 14 against Hunter, Pinkerton, Havens, Starling, Crowson, and Etherton,

**Severed Case 2:** Counts 15 through 20 against Hunter, Pinkerton, Crowson, Etherton, Havens, Crompton, North, Yingling, Freeman, Gibbs, Allen, and Creek.

Plaintiff will be given 21 days to decide whether to proceed with Severed Case 1 and/or 2. If he chooses to proceed with either one, he will incur an additional filing fee for the case and will also receive a "strike" if the case is dismissed at screening under 28 U.S.C. § 1915A for one of the reasons set forth in 28 U.S.C. § 1915(g). If he chooses not to proceed or fails to respond by the deadline, these claims and defendants will be dismissed without prejudice from this action.

### Section 1915A Review: Counts 1-10

Counts 1-10 implicate the Fourteenth Amendment Due Process Clause, which protects pretrial detainees from all forms of punishment. *See Kingsley v. Henderson*, 576 U.S. 389 (2015) (Fourteenth Amendment excessive force claim); *Miranda v. County of Lake*, 900 F.3d 335 (7th Cir. 2018) (Fourteenth Amendment medical care claim). Jail conditions violate the Fourteenth Amendment when they deprive a pretrial detainee of basic human needs, such as food, water, medical care, and safety. *Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019). To state a claim in this context, a pretrial detainee must plausibly allege that each defendant acted

"purposefully, knowingly, or perhaps even recklessly" in relation to a risk—in this case, the risk of assault or denial of medical care—and that each defendant's conduct was also objectively unreasonable. *See Ferguson v. Cook Cnty. Corr'l Facility/Cermak*, 836 F. App'x 438, 441 (7th Cir. 2020) (citing *Miranda*, 900 F.3d at 353). Negligence does not satisfy this standard. *Id*.

Counts 1, 2, 3, and 4 do not survive screening. These claims arise from Plaintiff's request for protective custody on December 22, 2020 (C/O Tommy), December 30, 2020 (C/O Craig), January 7, 2021 (Sergeant Crowson, C/O Yingling, and C/O Etherton), and January 14, 2021 (Sergeant Starling). Plaintiff's allegations regarding these requests are vague. He does not identify who posed a threat to his safety or security—only that he feared for his safety. Nor does he describe any encounters with a threatening individual in his housing unit or elsewhere during this period. At the same time, Defendants responded to his concerns with good reasons for the transfer delay, *i.e.*, COVID-related restrictions or lockdowns. And Plaintiff was never actually harmed following any of these requests in December 2020 or January 2021. Therefore, Counts 1, 2, 3, and 4 will be dismissed without prejudice for failure to state a claim against these defendants.

Count 5 survives screening against Nurse Reynolds, for her allegedly knowing and unreasonable decision to designate Inmate Summers as in inmate trustee while a "keep separate order" was in effect. This designation gave Summers access to all areas of the Jail, including the protective custody unit where Plaintiff was housed, while the two inmates were supposed to be separated for their safety.

Count 6 survives screening against Sergeant Crowson, C/O Bandit, C/O Gibbs, and C/O Etherton for allegedly knowingly and unreasonably transferring Inmate Summers into the protective custody unit with Plaintiff while the "keep separate order" was in effect on July 15, 2021, shortly before Plaintiff was attacked. (Doc. 1, pp. 19-20).

Count 7 will proceed against Sergeant Crowson and Nurse Reynolds for allegedly unreasonably denying Plaintiff medical treatment for his resulting injuries.

Counts 8 will be dismissed without prejudice against Sergeant Crowson for placing Plaintiff on lockdown in the days immediately after his attack. The allegations suggest that the officer made this decision to keep the plaintiff safe rather than to punish him. Without further factual development, this claim cannot proceed.

Count 9 will be dismissed without prejudice against Sergeant Etherton, Lieutenant Havens, and Lieutenant Pinkerton. Plaintiff allegedly demanded money damages from these defendants for failing to protect him from the assault, and he brings this claim against them for denying his request. Plaintiff's monetary demand supports no viable independent claim against the defendants.[2]

Count 10 will proceed against Lieutenant Havens and Lieutenant Pinkerton for allegedly denying Plaintiff's request for mental health treatment necessitated by his attack.

## Disposition

The First Amended Complaint (Doc. 20) survives screening under 28 U.S.C. § 1915A. The following claims will receive further review in this case:

- **COUNT 5** against **REYNOLDS**;
- **COUNT 6** against **CROWSON, BANDIT, GIBBS,** and **ETHERTON**;
- **COUNT 7** against **REYNOLDS** and **CROWSON**; and
- **COUNT 10** against **HAVENS** and **PINKERTON**.

The following claims are **DISMISSED without prejudice** for failure to state a claim:

---

[2] Plaintiff included this request for relief in the First Amended Complaint.

10

- **COUNT 1** against **TOMMY**;

- **COUNT 2** against **CRAIG**;

- **COUNT 3** against **CROWSON, YINGLING,** and **ETHERTON**;

- **COUNT 4** against **STARLING**;

- **COUNT 8** against **CROWSON**;

- **COUNT 9** against **ETHERTON, HAVENS,** and **PINKERTON**.

**COUNTS 11 through 20 are subject to severance or dismissal, as follows:**

### SEVERED CASE #1:

Count 11: Fourteenth Amendment claim against Hunter, Pinkerton, Havens, and Starling for housing protective custody inmates alongside inmates in medical and administrative segregation and denying Plaintiff access to essential services or programs from August 1, 2021 until June 30, 2022.

Count 12: First and/or Fourteenth Amendment claim against Hunter, Pinkerton, and Havens for interfering with Plaintiff's access to the courts by confiscating his legal documents during a cell shakedown on August 12, 2021.

Count 13: First and/or Fourteenth Amendment claim against Hunter, Pinkerton, Havens, and Starling for punishing the entire housing unit when an inmate attempted to retrieve legal documents from August 13 to September 2, 2021.

Count 14: Fourteenth Amendment claim against Hunter, Crowson, Etherton, Havens, and Pinkerton for mishandling Plaintiff's grievances from September 16 until November 5, 2021.

### SEVERED CASE #2:

Count 15: Fourteenth Amendment claim against Crowson, Etherton, Havens, Pinkerton, and Hunter for placing Plaintiff on lockdown with no access to essential services while investigating a PREA claim against him from November 23 until December 8, 2021.

Count 16: Fourteenth Amendment claim against Crompton for denying Plaintiff mental health treatment necessitated by the PREA investigation from November 23 until December 8, 2021.

Count 17: First Amendment claim against North, Yingling, and Freeman for retaliating against Plaintiff for filing a lawsuit by conducting a shakedown

11

of his cell in December 2021 or January 2022.

**Count 18:** Fourteenth Amendment claim against Hunter, Allen, North, and Havens for denying Plaintiff's grievance about the shakedown.

**Count 19:** First and/or Fourteenth Amendment claim against Gibbs for opening two pieces of mail outside of Plaintiff's presence on January 26, 2022.

**Count 20:** Fourteenth Amendment claim against Hunter, Creek, Etherton, and North for denying Plaintiff's related grievance about mail interference that occurred on January 26, 2022.

**Plaintiff has 21 days, until November 20, 2023, to advise the Court, in writing, whether he wishes to proceed with Severed Case #1 and/or Severed Case #2.  If Plaintiff does not notify the Court by this deadline, these cases, claims, and defendants will all be dismissed without prejudice.  See FED. R. CIV. P. 20-21; *Dorsey v. Varga*, 55 F.4th 1103 (7th Cir. 2022)**.

The Clerk shall prepare for Defendants **REYNOLDS, CROWSON, BANDIT, GIBBS, ETHERTON, HAVENS,** and **PINKERTON**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the First Amended Complaint (Doc. 20), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be

retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the First Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, even though he was granted *in forma pauperis* status. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing parties informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**Consistent with the above, the Clerk's Office is DIRECTED to ENTER the standard qualified protective order under the Health Insurance Portability and Accountability Act.**

**IT IS SO ORDERED.**

DATED:  October 30, 2023              *s/ Staci M. Yandle*
                                                      **STACI M. YANDLE**
                                                      **United States District Judge**

## Notice to Plaintiff

Once identified, the Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your First Amended Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your First Amended Complaint. It will likely take at least **60 days** *from the date they are served with this lawsuit* to receive the Defendants' Answers, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.