IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JORGE LUIS LEAL, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 22-cv-1172-RJD |
| ) | |
| LT. PINKERTON, *et al.*, ) | |
| ) | |
| Defendants. ) | |

# **ORDER**

**DALY, Magistrate Judge:**[1]

This matter comes before the Court on Defendant Reynolds' Status Report (Doc. 76) and for case management purposes. Plaintiff Jorge Luis Leal filed this action under 42 U.S.C. § 1983, alleging constitutional deprivations during his pretrial detention at Williamson County Jail. (Doc. 20). Following threshold review of the First Amended Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed in this case on the following claims:

**Count 5:** Fourteenth Amendment claim against Reynolds for subjecting Plaintiff to a serious risk of harm to his health or safety when she approved Inmate Summers as an inmate trustee while a "keep separate order" from Plaintiff was in effect sometime before July 15, 2021;

**Count 6:** Fourteenth Amendment claim against Crowson, Bandy, Gibbs, and Etherton for failing to protect Plaintiff from a serious risk of harm when they moved Inmate Summers into the Jail's protective custody unit on July 15, 2021, just before Inmate Summers and others attacked Plaintiff;

**Count 7:** Fourteenth Amendment claim against Crowson and Reynolds for delaying or denying Plaintiff adequate medical treatment for the injuries he sustained

---

[1] This case has been assigned to the undersigned to conduct all proceedings, including trial and final entry of judgment upon the parties' full consent pursuant to 28 U.S.C. Sec. 636(c) and Federal Rule of Civil Procedure 73. (Doc. 64).

                    in the inmate attack on July 15, 2021; and

**Count 10:**    Fourteenth Amendment claim against Havens and Pinkerton for denying Plaintiff's requests for mental health care from July 22 until August 3, 2021.

(Doc. 23, pp. 5-10).

On April 1, 2024, Defendants filed their respective motions for summary judgment on the issue of exhaustion of administrative remedies, to which Plaintiff responded. (Docs. 48, 49, 57, & 58). On December 18, 2024, while the motions for summary judgment were still pending, Reynolds filed a Suggestion of Bankruptcy and Notice of Stay as to Wellpath, LLC, advising the Court that on November 11, 2024, Wellpath, LLC ("Wellpath"), Reynolds' employer at all times relevant to the action, filed a Voluntary Petition for Non-Individuals Filing Bankruptcy for relief under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of Texas (Houston Division) (the "Bankruptcy Court"), commencing Case No. 24-90533ARP. (Doc. 65). While Wellpath is not a party in this action, Reynolds argued for an automatic stay pursuant to 11 U.S.C. § 362 and a Stay Order because Plaintiff's claims against her arose out of her provision of medical services to Plaintiff in her capacity as a Wellpath employee.[2] (*Id.*). On January 22, 2025, the Court entered an order staying the case pursuant to the Bankruptcy Court's Stipulated and Agreed Amended Order that was entered on January 14, 2025 ("Amended Staying Order," Doc. 67-1).[3] (Doc. 68). The Amended Staying Order expanded the scope and application of the automatic stay until February 18, 2025, as to claims and causes of action filed against Wellpath's current or former employees to allow the opportunity to confirm

---

[2] The Stay Order refers to the bankruptcy court's Amended Interim Order Enforcing the Automatic Stay (the "Stay Order," Doc. 65-2).

[3] The Court had previously denied Reynolds' request to find that the case was automatically stayed pursuant to 11 U.S.C. § 362(a) or the bankruptcy court's Stay Order and had further declined to exercise its inherent power to stay proceedings on equitable grounds. (Doc. 66)

and substantiate the scope and extent of Wellpath's indemnification obligations owed to those parties. (Doc. 67-1, pp. 3-4). Thereafter, the Bankruptcy Court extended the automatic stay as to those claims on a final basis until the earlier of (a) the effective date of a confirmed chapter 11 plan; (b) dismissal of the chapter 11 cases of the Debtors; or (c) April 30, 2025. (Doc. 70). On May 1, 2025, the Bankruptcy Court further extended the automatic stay through May 7, 2025. (Doc. 76, p. 1).

On that same day, the Bankruptcy Court entered Findings of Fact, Conclusions of Law, and Order (I) Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. and Certain of Its Debtor Affiliates and (II) Approving the Disclosure Statement on a Final Basis [Docket No. 2596] (the "Confirmation Order") confirming the Debtors' First Amended Joint Chapter 11 Plan of Reorganization of Wellpath Holdings, Inc. And Certain of Its Debtor Affiliates (with Technical Modifications) [Docket No. 2552-1] (the "Plan"). (Docs. 76, p. 1; 76-1).

On May 21, 2025, Reynolds filed the Updated Status Report on Wellpath's Bankruptcy Proceedings and Dischargement. (Doc. 76). Reynolds represented the automatic stay covering claims against all non-debtor defendants, including Reynolds, expired on May 8, 2025. (Doc. 76, p. 2). She further represented that pursuant to the Plan, Wellpath's directors, officers, and current and former employees who were named as defendants were released from liability for claims that arose prior to the bankruptcy (*i.e.,* before November 11, 2024). Since the events alleged in the First Amended Complaint allegedly occurred prior to November 11, 2024, Reynolds argued that Plaintiff's claims against her will be released—unless Plaintiff elects to opt out of the third-party releases by July 30, 2025. (Doc. 76, p. 3). Reynolds cited Article IX (D) of the Plan, as well as

Paragraph 43 of the Confirmation Order.  (*Id.*)

Article IX (D) of the Plan provides, in relevant parts, that

"[t]o the fullest extent permissible under applicable law, other than in the case of willful misconduct, gross negligence, or actual fraud (but not, for the avoidance of doubt, Avoidance Actions), each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Released Party from any and all claims, interests, damages, remedies, causes of action, . . .  based on or relating to, or in any manner arising from, in whole or in part, . . . [Wellpath's] business operations. . . .

. . .

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the Third-Party Release, which includes by reference each of the related provisions and definitions contained in this Plan, and, further, shall constitute the Bankruptcy Court's finding that the Third-Party Release is: (1) consensual; (2) essential to the confirmation of the Plan; (3) given in exchange for the good and valuable consideration provided by the Released Parties, including the Released Parties' contributions to facilitating the Restructuring Transactions and implementing the Plan; (4) a good faith settlement and compromise of the Claims released by the Third-Party Release; (5) in the best interests of the Debtors and their Estates; (6) fair, equitable, and reasonable; (7) given and made after due notice and opportunity for hearing; and (8) a bar to any of the Releasing Parties asserting any claim or Cause of Action of any kind whatsoever released pursuant to the Third-Party Release. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (1) any post-Effective Date obligations of any party or Entity under the Plan, the Confirmation Order, any Restructuring Transactions, or any document, instrument, or agreement (including those set forth in the Plan Supplement) executed to implement the Plan, including any Claim or obligation arising under the Plan, (2) any Liquidating Trust Cause of Action, (3) any Retained Cause of Action, (4) if the H.I.G. Settlement Motion is not approved by a Final Order, H.I.G. Causes of Actions, (5) any Claims or Causes of Action against any Professional Corporation, or (6) any individual from any Claim or Cause of Action related to an act or omission that constitutes actual fraud, willful misconduct, or gross negligence.

(Doc. 76-1, pp. 132-133).

Under Article IX (F) of the Plan,

"[e]xcept as otherwise expressly provided in the Plan, . . . all Entities who have held, hold, or may hold claims or interests that have been released, discharged, or

>are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Restructuring Debtors, the Exculpated Parties, or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests; . . . and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such claims or interests released or settled pursuant to the Plan; provided, that, for the avoidance of doubt, this Article IX.F shall not apply to parties that timely opt out of the Third-Party Release to preserve their claims against the Released Parties.

(Doc. 76-1, p. 134).

Paragraph 43 of the Confirmation Order provides that "Reorganized Wellpath shall provide notice to all known personal injury . . . claimants of the extended 90-day period to opt out from the Third-Party Release in Article IX.D and file a certificate of service with the Bankruptcy Court. (Doc. 76-1, p. 52). Based on that same paragraph, the Bankruptcy Court retains jurisdiction to address any issue relating to a personal injury claimant's deprivation of "constitutional due process in connection with the solicitation and/or the Bar Date Order." (*Id.*).

Reynolds attached to her report the Notice of Extended Third-Party Release Opt-Out Period for Incarcerated Individuals, advising any incarcerated individual who qualifies as a "Holder of a Claim," of the right to opt-out from the Third-Party Releases set forth in Article IX.D of the Plan in accordance with the procedures outlined in the Plan, by 11:59 p.m. (prevailing Central Time) on July 30, 2025 (*i.e.*, 90 days after the Confirmation Date). (Doc. 76-2, p. 1).

Based on the foregoing, the temporary stay that was imposed in this case is **LIFTED**. By **August 4, 2025**, Reynolds is **DIRECTED** to file an updated status report advising whether Plaintiff has opted out from the Third-Party Releases set forth in Article IX.D of the Plan.

Plaintiff is **WARNED** that failure to opt out from the Third-Party Releases set forth in Article IX.D of the Plan in accordance with the procedures outlined in the Plan, by 11:59 p.m.

(prevailing Central Time) on **July 30, 2025**, may result in his claims against Defendant Reynolds being dismissed with prejudice.

Unless Plaintiff timely opts out from the Third-Party Releases set forth in Article IX.D of the Plan, the parties are **DIRECTED** to file briefs by **August 18, 2025**, addressing with specificity whether Plaintiff's claims against Reynolds are subject to dismissal pursuant to Article IX.D of the Plan. The parties also need to address with specificity the following issues:

(1) Whether Reynolds qualifies as a Released Party for the purposes of Article IX.D of the Plan;

(2) Whether Plaintiff qualifies as a Releasing Party for the purposes of Article IX.D of the Confirmation Order;

(3) Whether Plaintiff's Fourteenth Amendment claims against Reynolds asserted in Counts 5 and 7 of the First Amended Complaint, are not subject to, release and discharge under Article IX.D of the Plan as "Claim[s] or Cause[s] of Action related to an act or omission that constitutes actual fraud, willful misconduct, or gross negligence." *See Farmer v. Brennan*, 511 U.S. 825, 836, 114 S. Ct. 1970, 1978, 128 L. Ed. 2d 811 (1994) ("With deliberate indifference lying somewhere between the poles of negligence at one end and purpose or knowledge at the other, the Courts of Appeals have routinely equated deliberate indifference with recklessness."; *Peoples v. Cook Cnty.*, 128 F.4th 901, 909 (7th Cir. 2025) ("Deliberate indifference requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk."); and

(4) Any implication in the Third-Party Release under Article IX.D of the Plan pursuant to *Harrington v. Purdue Pharma L. P.*, 603 U.S. 204, 226, 144 S. Ct. 2071, 2087, 219 L. Ed. 2d 721 (2024).

Reynolds is further directed to set forth evidence establishing her employment relationship with Wellpath during all times relevant to this action.

Now that the stay is lifted, Defendants Bandy, Crowson, Etherton, Gibbs, Havens, and Pinkerton's Motion for Summary Judgment on Exhaustion of Administrative Remedies (Doc. 48) will be set for an evidentiary hearing in a separate order. Reynolds' Motion for Summary

Judgment for Failure to Exhaust Administrative Remedies (Doc. 49) is **DENIED without prejudice as moot**.  Reynolds may renew her motion, if needed, after the issue of discharge of Plaintiff's claims against her pursuant to the Bankruptcy Court's proceeding and the Confirmation Order is resolved.

**IT IS SO ORDERED.**

**DATED: July 22, 2025**

*s/ Reona J. Daly*
**Hon. Reona J. Daly**
**United States Magistrate Judge**