IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JORGE LUIS LEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 22-cv-1172-RJD |
| | ) | |
| LT. PINKERTON, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:[1]**

This matter comes before the Court on Defendants' Motions for Summary Judgment on the Issue of Exhaustion of Administrative Remedies.  Docs. 48 & 49.

**Background**

Plaintiff Jorge Luis Leal filed this action under 42 U.S.C. § 1983, alleging constitutional deprivations during his pretrial detention at Williamson County Jail ("Williamson County").  Doc. 20.  He claims that some time prior to July 15, 2021, while Plaintiff was in protective custody, Defendant Reynolds, a nurse, approved another detainee, Rex Summers, as an inmate trustee, even though she knew there was a "keep separate order" from Plaintiff for past harassment and threats. Doc. 20, p. 19.  On July 15, 2021, Defendants Crowson, Bandit, Gibbs, and Etherton transferred all inmate trustees into the protective custody unit.  *Id.*  Soon thereafter, Summers and two other inmates assaulted Plaintiff.  *Id.* at 19-20.  Plaintiff allegedly sustained physical injuries that

---

[1] This case has been assigned to the undersigned to conduct all proceedings, including trial and final entry of judgment upon the parties' full consent pursuant to 28 U.S.C. Sec. 636(c) and Federal Rule of Civil Procedure 73. (Doc. 64).

required prompt medical attention, but Defendants Crowson and Reynolds denied his request for treatment. *Id.* Plaintiff also alleged that Defendants Havens and Pinkerton denied him mental health treatment between July 22, 2021, and August 3, 2021. *Id.*

Following threshold review of the First Amended Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims:

> **Count 5:** Fourteenth Amendment claim against Reynolds for subjecting Plaintiff to a serious risk of harm to his health or safety when she approved Inmate Summers as an inmate trustee while a "keep separate order" from Plaintiff was in effect sometime before July 15, 2021;
>
> **Count 6:** Fourteenth Amendment claim against Crowson, Bandy, Gibbs, and Etherton for failing to protect Plaintiff from a serious risk of harm when they moved Inmate Summers into the Jail's protective custody unit on July 15, 2021, just before Inmate Summers and others attacked Plaintiff;
>
> **Count 7:** Fourteenth Amendment claim against Crowson and Reynolds for delaying or denying Plaintiff adequate medical treatment for the injuries he sustained in the inmate attack on July 15, 2021; and
>
> **Count 10:** Fourteenth Amendment claim against Havens and Pinkerton for denying Plaintiff's requests for mental health care from July 22 until August 3, 2021.

Doc. 23, pp. 5-10.

On April 1, 2024, Defendants filed their motions for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies prior to initiating this action. Docs. 48 & 49. Plaintiff responded that he had fully complied with the facility's grievance process, and alternatively, that the grievance process was unavailable to him. Docs. 57 & 58. On January 22, 2025, the Court temporarily stayed this case due to a third party's bankruptcy proceeding that potentially implicated Plaintiff's claims against Defendant Reynolds. Doc. 68. On May 21, 2025, Reynolds advised that the temporary stay imposed by the bankruptcy proceeding expired and that Plaintiff's claims against her were potentially subject to release under a provision of the

bankruptcy court's confirmation order. Doc. 76, p. 2. On July 22, 2025, the stay was lifted. Doc. 77. The Court also denied without prejudice Defendant Reynolds' motion for summary judgment while the issue of discharge of Plaintiff's claims against Reynolds was pending and set the remaining Defendants' motion for summary judgment for an evidentiary hearing on August 21, 2025, under *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008). Doc. 78.

On August 11, 2025, Plaintiff moved to continue proceedings in this case until his upcoming release from custody on October 15, 2025. Doc. 84. He argued he could not meaningfully participate in the hearing because he suffers from post-traumatic stress disorder following an assault at his current facility, and his legal documents were taken away after being placed in protective custody on July 1, 2025. *Id.* The Court denied the motion without prejudice due to the prolonged stay of the case, but promised to reconsider Plaintiff's motion if, during the hearing, it became apparent that Plaintiff could not meaningfully participate in it. *Id.* In the same Order, the Court denied without prejudice Defendant Reynolds' Motion for Judgment on the Pleadings (Doc. 87) on the issue of the discharge of the bankruptcy proceeding. *Id.* The Court reasoned that Reynolds had failed to show that the claims against her were not exempted from the confirmation order's release and discharge provision as claims "related to an act or omission that constitutes . . . willful misconduct, or gross negligence." *Id.* at 5-6.

The Court held a hearing on August 21, 2025. Doc. 92. Defendant Reynolds orally moved to renew her summary judgment motion and asked for a joint hearing on the exhaustion issue. Plaintiff also renewed his motion to continue because he still did not have access to his legal documents. *Id.* The Court granted both motions and reset the evidentiary hearing for August 26, 2025. *Id.* The Court also ordered the Clerk to mail copies of Defendants' pending motions and

Page **3** of **24**

responses to Plaintiff's current facility and ensure that Plaintiff received them in time.

The Court held a *Pavey* hearing on August 26, 2026. Plaintiff moved for a reconsideration of his motion to continue the case until after his release from custody due to his ongoing mental health struggles and his lack of access to a grievance log that he maintained while in Williamson County. Plaintiff confirmed, however, that he had received all filings related to the pending motions, including his responses, which he had prepared when he still had his grievance log. The Court denied Plaintiff's motion to continue and proceeded with the evidentiary hearing.[2]

For the reasons set forth below, Defendants Bandy, Crowson, Etherton, Gibbs, Havens, and Pinkerton's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 48) is **GRANTED in part and DENIED in part**. Defendant Reynolds' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 49) is **GRANTED**.

## Findings of Facts

Having considered the entirety of the record, the Court makes the following findings of facts.[3] Plaintiff was booked into the Williamson County Jail on September 7, 2019, and released on June 23, 2022. Doc. 48, ¶1. Between July 16, 2020, and October 25, 2021, Plaintiff was housed in the E Pod. Doc. 48, ¶2. He had access to paper grievance forms but could also use kiosks to submit grievances electronically. Doc. 48, ¶¶ 3-4.

The 2019 Williamson County Jail Inmate Handbook, effective during Plaintiff's detention, set forth the grievance procedure as follows:

---

[2] Based on the Court's own observation of Plaintiff during the hearing, the Court was convinced that Plaintiff maintained the capacity to adequately represent himself and to testify on his efforts to exhaust his administrative remedies. Plaintiff eloquently communicated with the Court and accurately relayed information and details about the timeframe of his incarceration and his exhaustion efforts. Plaintiff also effectively cross-examined witnesses.

[3] Pursuant to Local Rule 56.1(g), Defendants' allegations in their Statements of Facts are being deemed admitted to the extent that they were not specifically disputed in Plaintiff's responses. SDIL-LR 56.1(g).

You must first try to resolve problems with the Housing Officer or inmates before filing an Inmate Grievance Form.  If you must file a Grievance, file the Inmate Grievance Form with the Housing Officer to address problems or conflicts.

Inmates are allowed to file a grievance when: subjected to a criminal act by another inmate, a prohibited act by a staff member, abuse, harassment, violation of civil rights, or denied privileges, without just cause, as specified in this handbook while in custody of the Williamson County Jail.

Step 1: On the Grievance Form, write a request to the Housing Officer and explain what your grievance is. If your grievance is not resolved, go to Step 2;

Step 2: Write a grievance form request to the Shift Sergeant/Supervisor stating your grievance. Include the name of the officer who already answered the grievance. If the grievance is not resolved, go to Step 3.

Step 3: Write a grievance form request to the Jail Administrator by following the same procedure you did with the Shift Sergeant/Supervisor. If the grievance is not resolved, go to Step 4.

Step 4: Write a request form to the Sheriff by following the same procedure as you did with the Jail Administrator. The Sheriff's decision will be final. Inmates have 24 hours from the time of an incident to file a grievance and 24 hours from each time a grievance is denied to file the next step.

Docs. 48, ¶7; 48-1, p. 13.  On September 7, 2019, Plaintiff received and signed for a copy of the Inmate Handbook.  Doc. 48, ¶8; Doc. 48-1, ¶12.

Plaintiff's Williamson County records contain the following relevant grievances and responses:

a.  Grievance dated July 19, 2021 ("Step 1 Grievance"), which states:

This is a complaint regarding the incident that happened in E Block on Thursday, July 15, 2021 approximately at 7pm. Earlier that day at approximately 5pm the staff made the decision to house the trustees in this same block, which is suppose to be a "PC" unit. One of the trustees was Rex Summers with whom I had a separation order done by Havens in January 2021 (see my file) due to the bullying, harassment, and threats that Summers and other inmates imposed on me for about a month. Importantly, staff were aware and did nothing to solve the issue until my attorney got involved. Needless to say and like one of the COs said, "I knew this was a bad idea." In deed it was a bad idea that resulted in me being assaulted by Summers and

two others trustees. Due to the decision by the staff to put Summers in the same block as me, I hold the jail liable for all the damages done to me. At this time, I am asking for 1.) compensation for my injuries (not limited to just physical) and 2.) the separation order between Summers and me to continue to be reenforced.

Docs. 48, ¶9(a); 48-2, pp. 3-4.

Defendant Etherton responded on July 20, 2021, that "For the space allowed on the grievance form, no grievance is listed other than that you have a separation with Summers. The separation has been noted and Summers has been removed from the block." Doc. 48-1, p. 93.

   b.  Grievance dated July 20, 2021, ("Step 2 Grievance") stating:

"Though I appreciate the meeting we had today, the only issue discussed regarding the grievance was about the separation.  Here is a list of names that Havens already wrote down during the meeting: …." Id. In deed you made a compromise that you will do what you can to prevent this from happening again. However the damages to me have already been done. In short, only part of Step 1 Grievance has been answered. I'm still asking the jail for compensation for my injuries (not limited to physical). . . "

Docs. 48, ¶9(b); 48-2, p. 5.

The next day, on July 21, 2021, Plaintiff submitted a grievance with unidentified step, stating:

Havens, yesterday at around 2:00 pm I submitted a Step 1 Grievance instead of a Step 2 by mistake. Sgt. Etherton may have already told you about it. Just wanted to make sure that was clear. Either way, one of the issues still remains unsolved. Look forward to hearing from you. Thanks.

Docs. 48, ¶9(c); 48-2, p. 11.

Defendant Havens responded to Plaintiff's Step 2 Grievance on September 16, 2021:

"On 8/27/21, I, along with witnessing Officer Baker, met and explained to you . . . A grievance indicating compensation will be forwarded to our State's Attorney's Office as it's an indication of suit . . ."

Doc. 48-1, p. 65.

c.  Grievance dated July 22, 2021, identified as Step 3, stating:

Pinkerton, this is my Step 3, following my unanswered Step 2. On Monday, July 19, 2021, I filed a Step 1 (see file). On Tuesday, July 20, 2021, I had a conversation with Havens and Etherton in the library concerning my Step 1. *We resolved about the separation order between me and Summers and that issue was resolved.* Even though Etherton's second response to my Step 1 says that they have answered my Step 1 Grievance, they never even made an attempt to mention about compensation. Havens' and Etherton's own admissions during conversation support my claim: 1) Havens to having watched the video where he was that I was assaulted by Summers and two others (Havens said it would never happen again), 2) We concluded that I gave in Baxter a list of inmates that were giving me trouble in Jan 2021 and it included Summers' and furthermore 4) Etherton inequivocaly admits that in fact there was a separation between me and Summers in my file. I now come before you to continue to ask for a response in writing to my compensation claim. Thanks.

Docs. 48, ¶9(d); 48-2, pp. 25-26 (emphasis added).

d.  Grievance dated July 26, 2021, unidentified step, stating:

Havens, I asked Gibbs last night about how to request counselling and she told me that because of COVID no one could come into the jail but she said to ask you. Though I'm feeling better physically I cannot say the same about my mental, emotional, and psychological health. Due to all that has been going on here, my depression has worsen. Everywhere I go, everyone is talking about the incident, about me, and "chomos" including some staff. I have lots of anxiety, anguish I'm having trouble sleeping and focusing. I'm angry but I the same time still don't feel safe being in here. Is there any possibility that the jail can provide me a counselor asap? Thanks.

Docs. 48, ¶9(e); 48-2, p. 13.

e.  Grievance dated August 3, 2021, unidentified step, stating

Pinkerton, I have a few important questions for you. 1) How is the research and investigation regarding my never-responded Step 2 Grievance going? When should I expect a response? Otherwise I am ready to file a Step 4 directly to the Chief. 2) About a week ago I sent Havens a message thru a Step 2 grievance concerning my mental and emotional health. I asked him for counseling since I'm struggling quite a bit due to everything that has happening to me here. Unsurprisingly, he has not responded to this message either. 3) Unsurprisingly, too, is that I never received prompt and adequate medical attention. The night of the assault I asked to be taken to the ER and Crowson said the nurse said she would see me the next morning. The next day around midday she finally checked me. I told her about my teeth and gums

and she said that simply she could not do anything about that. More than two weeks after I'm still struggling with that. My teeth and gums are sensitive and hurt when I eat or drink anything, causing my head to hurt too. I consulted with a local dentist and says it may be nerve damage that needs to be treated before it's too late. Thanks.

Docs. 48, ¶9(f); 48-2, pp. 27-28.

    f.   Grievance dated September 15, 2021, identified as Step 2, stating:

This is a notice regarding my unanswered step 2 pertaining to the compensation you must award me for causing the preventable assault by Rex Summers and two other trustees where I was the victim. I filed a step 3 on 7/22/21 since my step 2 was never answers. *Pinkerton's response was that, "until you receive an answer on your step 2, grievance step 3 is invalid. Step 2 is being researched and you will receive an answer on step 2 once is investigated." On August 3, 2021, I inquired again and Pinkerton said, "The answer to your step 2 grievance was sent to the sheriff's office atty..."* It has been about a month since your response to my inquiry and yet have not received a satisfactory remedy to my grievance. A satisfactory remedy would be that I get awarded a fair amount according to courts who have awarded compensation to other inmates that were victims of similar crimes. A satisfactory remedy is not keeping silence or invalidating my grievances. I, respectfully, inform you that if Monday, September 20, 2021 by 4pm I do not get a satisfactory remedy to my step 2, I will continue to exercise my right to file a step 3 and then a step 4. Thanks.

Docs. 48, ¶9(h); 48-2, pp. 22-23 (emphasis added).

    g.  Grievance dated September 16, 2021, identified as Step 3 ("Step 3 Grievance"), stating:

This is your third official notice concerning the compensation you must award me due to Rex Summers and two other trustees assaulting because you put them in PC block with me on July 15, 2021, to your convenience and without considering that Summers and I had a separation. On 9/15/21 I inquired with Havens about my step 2 since he never responded to it. On 9/16/21 he responded by denying my step 2. For the record and though you may not like to hear it, allow the documented facts speak for themselves. As you know the grievance process was implemented for the purpose of documenting when an inmate files a complaint and allows you the opportunity to remedy the complaint before it goes to court. We file a step in writing and you should respond in writing, unlike Havens has done with me twice by pulling me out of the block into the library to talk to me about the grievance and then responds in writing saying something different than what was actually discussed and even claiming that the issue had been resolved. His response to my step 2 is the perfect example. He claims on 8/27/21, along with Baker, met with me and explained that, *"A grievance indicating compensation WILL BE forwarded to*

*our State's Attorney's office as it's an indication of a suit."* First, this discussion we had in the library was about the commissary items and legal and confidential document taken from my cell during shakedown by DOC officers. His response to my step 2 regarding this issue proves it. Second, on 8/3/21, Pinkerton had already told me my grievance had been sent to your attorney. Why would Havens be sending it again? Third, the only thing he did, typical of him, was to try to intimidate me by getting loud with me but failed because I did not allow him to, so he just got up and left. He now wants to blame me for the assault and since it happened, has tried to cover up the whole thing. It's a little too late for that; the material objective facts, including admissions by your own staff, and inmates who witnesses everything, first hand, unequivocally reveal the truth. Please respond to me in writing about my compensation. Thanks.

Docs. 48, ¶9(i); 48-2, pp. 36-37 (emphasis added).

A response on the body of the grievance states: "This is not a grievance, it is a demand and has received an answer. Grievance procedures not being followed. Grievance denied."

Doc. 48-1, pp. 67, 176.

h.  Grievance dated September 17, 2021, identified as Step 4 ("Step 4 Grievance), stating:

This is my official step 4 grievance notifying you for the last time about the compensation that I had asked for due to Rex Summers assaulting me along with two other trustees on July 15, 2021, as you chose to put them in this PC block with me to your convenience and without consideration of the fact that Summers and I had a separation. Pinkerton called my step 3 a "demand" while Havens saw it as a "grievance". Though they can call it as they wish as they can not even agree on that, the content of both steps remain to be similar. Somehow, they both agreed to deny my "grievances". What is left to emphasize are the undisputed facts that you are well aware of that reveal the serious violations of my civil rights by the jail and your staff. 1.) On January 2021, the jail put me in E block with other inmates, including Rex Summers, without consideration of my classification, violating IL Admin Code 20.701.70, 2.) A separation order resulted between me and Summers because of what happened on January 2021. Then you still put him in PC block with me on July 15, 2021,causing the assault as he confronted me about the separation. Another violation of IL Admin Code 20.701.70, 3.) This assault resulted in physical, metal, and emotional injuries to my person for which you are liable for, 4.) Nurse Raynolds failed to provide me with prompt and adequate medical attention, violating IL Admin Code 20.701.90, 5.) Nurse Raynolds made Summers a trustee without consideration of his classification violating IL Admin Code 20.701.5, 6.) Trustees should have never been put in PC block simply to your convenience, violating IL Admin Code 20.501.310, 7.) Let's not forget that you

brought DOC officers to shake us down and took legal and confidential documents from my cell that related to my criminal case and the assault. There are many facts that support my claim including the grievances, the video, admissions from your own staff, and many inmates that witnessed everything first hand. Please respond to me in writing and provide me copies of ALL my grievances and your responses related to this complaint.

Docs. 48, ¶9(j); 48-2, pp. 43-44.

Defendant Pinkerton, responded to that grievance on September 20, 2021, stating: "You have received a response to your step 4 grievances concerning the same issue. You are not following the proper grievance procedure. Grievance denied." Doc. 48-1, pp. 123, 166-174.

*Plaintiff's Testimony*

At the *Pavey* hearing, Plaintiff testified that he submitted his grievances at the kiosk. The kiosk allowed detainees to select the step of grievances they intended to submit, but not to fill out or otherwise select the recipient of the grievance. He argued that he followed all four steps regarding the incident on July 15, 2021. In his Step 1 Grievance, he sought injunctive relief in the form of the separation order between him and other inmates and compensation for his mental and physical injuries. Defendants Havens and Etherton met with Plaintiff after his Step 1 Grievance and resolved his requested injunctive relief by issuing a keep-separate order between him and Summers. After his injunctive relief was satisfied, Plaintiff continued filing his Step 2 Grievance seeking compensation. Because, despite his follow-up efforts, he did not receive a substantive response for over a month, Plaintiff repeated his compensation request in his Step 3 Grievance, which Defendant Pinkerton denied on the same day, and then again in his Step 4 Grievance, which Defendant Pinkerton also denied.

Plaintiff admitted that he only referenced Defendant Reynolds or complained about her failure to provide him with medical treatment following the July 15, 2021, incident in his Step 4

Grievance. None of the prior steps contained any reference to any medical personnel by name or description. Plaintiff clarified, however, that he was never instructed to identify the officers, medical personnel, or other detainees responsible for the alleged wrongdoing in his grievance. He further complained about the four-step grievance process being complicated and difficult to track because the grievances did not have an identification or reference number, and because it allowed detainees only 24 hours from the receipt of a response to submit their next step grievance, without, however, setting forth any timeframe for the jail's response. Plaintiff did not recall filing any additional relevant grievances other than the ones included in Defendants' summary judgment motions.

*Defendant Pinkerton's Testimony*

Defendant Pinkerton served as a Captain at Williamson County since 2017 and was responsible for responding to detainees' grievances. He confirmed that detainees were required to submit four steps of grievances to exhaust their administrative remedies. Any request for compensation included in the grievance fell outside the authority of the jail staff and was sent to the state's attorney to address. Pinkerton reviewed Plaintiff's Steps 3 and 4 Grievances, dated September 16, 2021, and September 17, 2021, respectively. He denied both grievances because Plaintiff did not comply with the grievance process, as he filed those steps before receiving a substantive response to his compensation request in his Step 2 Grievance. He explained that the reason no substantive response was provided in Plaintiff's Step 2 Grievance was that the officers were waiting for the State Attorney's answer.

*Defendant Havens' Testimony*

Defendant Havens testified that he was a Williamson County lieutenant responsible for
responding to detainees' grievances in 2021.  He confirmed that he met with Plaintiff after Plaintiff
filed his Step-1 Grievance to collect information about the inmates who posed a risk to Plaintiff's
safety.  Thereafter, a separation order was entered between Plaintiff and the inmates he had
identified during the meeting.  Havens also reviewed Plaintiff's Step 2 Grievance, dated July 20,
2021.  Because Plaintiff only sought monetary compensation, which jail staff were not authorized
to provide, Havens sent Plaintiff's grievance to the State Attorney's Office.  The State Attorney's
Office did not respond until after Plaintiff had filed his Step 4 Grievance on September 17, 2021,
at which time it denied Plaintiff's request for compensation.  Havens confirmed that, after the entry
of the separation order in response to Plaintiff's Step 1 Grievance, Plaintiff only sought
compensatory relief for his injuries.

## Analysis

*Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is
no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
law."  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322(1986); *see also Ruffin-
Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005).  The movant
bears the initial burden of demonstrating the lack of any genuine issue of material fact.  *Celotex*,
477 U.S. at 323.  Once a properly supported motion for summary judgment is made, the adverse
party "must set forth specific facts showing there is a genuine issue for trial."  *Anderson v. Liberty
Lobby, Inc.*, 477 U.S. 242, 250 (1986).  A genuine issue of material fact exists when "the evidence

is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, "the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust." *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008); *Roberts v. Neal, 745 F. 3d 232,* 236 (7th Cir. 2014).

### *Exhaustion Requirement*

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. 42 U.S.C. § 1997e(a). The procedural rules that a prisoner must satisfy to comply with the PLRA exhaustion requirement are not prescribed by the PLRA, but by the facility's grievance process itself. *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citation omitted). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler,* 438 F.3d 804, 808 (7th Cir. 2006). Thus, "a prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d

532, 535 (7th Cir. 1999).

To satisfy its purpose and comply with the PLRA requirements, the grievance must contain sufficient information to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002); *see also Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023) ("the grievance must raise the same claim as the lawsuit and provide enough information to indicate that the defendant is the target"). But the Seventh Circuit has explained that not naming the defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond—especially when the grievance system does not require inmates to identify the wrongdoer by name. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Further, any "procedural shortcoming" will not be detrimental to the inmate if the prison officials decide to address the grievance on its merits without rejecting it on procedural grounds. *Maddox*, 655 F.3d at 722 (citation omitted).

The PLRA requires inmates to exhaust administrative remedies even when they seek relief that cannot be granted by the administrative process, such as monetary damages, if there is "some form of relief" that the process can provide. *Booth v. Churner*, 532 U.S. 731, 731, 121 S. Ct. 1819, 1820, 149 L. Ed. 2d 958 (2001). At the same time, inmates are only required to exhaust those administrative remedies that are available to them. *Dole*, 438 F.3d at 809. The Supreme Court has explained that administrative remedies are unavailable, for instance, when the administrative process "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross v. Blake*, 578 U.S. 632, 639–40, 136 S.Ct. 1850, 195

L.Ed.2d 117 (2016). Thus, no exhaustion is required when a prison unreasonably delays or fails to respond to a properly filed grievance. *Lewis v. Washington,* 300 F.3d 829, 833 (7th Cir. 2002). Likewise, an inmate is not required to exhaust administrative remedies when the prison "lacks authority to provide any relief or to take any action whatsoever in response to a complaint." *Booth v. Churner,* 532 U.S. 731, 736 (2001); *Gilman v. Byrd*, No. 24-1951, 2025 WL 400028, at *3 (7th Cir. Feb. 5, 2025). Another scenario that renders an administrative remedy unavailable is "when the process is so opaque that no ordinary prisoner can discern or navigate through the process." *Ross*, 578 U.S. at 639–40, 136 S.Ct. 1850, 195 L.Ed.2d 117 (2016). Thus, no exhaustion is required when "essential elements of the procedure for obtaining [relief] are concealed." *Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011).

It is the defendant's burden to show "beyond dispute" that the administrative "remedies were available." *Ramirez v. Young*, 906 F.3d 530, 533 (7th Cir. 2018). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

### Discussion

The Court will address the issue of exhaustion as to each count of the First Amended Complaint in order.

**Count 5 against Reynolds**

Plaintiff failed to exhaust his administrative remedies on Count 5 of his First Amended Complaint. Plaintiff raised a Fourteenth Amendment claim alleging that Reynolds subjected him to a serious risk of harm when she approved Inmate Summers as an inmate trustee while a "keep separate order" was in effect. Plaintiff admitted at the hearing that he only referenced Reynolds in his Step 4 Grievance but argued that he provided general information about his claim in the

prior steps.  It is true that the Handbook did not require detainees to identify the wrongdoer by name.  However, the grievance should have still contained sufficient information to give the jail staff an opportunity to address it internally.  *See Maddox v. Love*, 655 F.3d 709, 722 (noting that regardless of the facility's requirements, the grievance must provide prison officials a fair opportunity to address a complaint).  In his Step 1 Grievance, Plaintiff complained about the jail staff placing Summers on the same block as him despite knowing that a keep separate order was in effect.  None of Plaintiff's prior grievance steps complained about Summers being designated as a Trustee or about Reynolds and any non-jail staff being involved in Summers' transfer to the same block as Plaintiff.  Accordingly, even assuming that Plaintiff properly followed all required steps, he failed to properly exhaust his grievance as to Count 5, because the prior steps did not describe the alleged wrongdoing.   In other words, Plaintiff's grievance failed to provide Williamson County with an opportunity to address his complaint prior to initiating this action.  Accordingly, Defendant Reynolds is entitled to summary judgment on Count 5 of the First Amended Complaint.

**Count 6 against Defendants Crowson, Bandy, Gibbs, and Etherton**

As to Count 6, there is no dispute that Plaintiff filed four steps of grievances: Step 1 Grievance, dated July 19, 2021; Step 2 Grievance, dated July 20, 2021; Step 3 Grievance, dated September 16, 2021; and Step 4 Grievance, dated September 17, 2021.  It remains at issue, however, whether those steps complied with the Williamson County grievance process on several aspects:  a) whether Plaintiff was required to identify the defendants by name in his grievance; b) whether Plaintiff failed to wait for a response to his Step 2 Grievance prior to proceeding to his Step 3 and Step 4 Grievances; and c) whether the administrative remedies remained available for

Plaintiff after his request for injunctive relief was fully satisfied.

First, the Court finds that Plaintiff was not required to identify Defendants by name in his grievance. The Handbook simply does not require so. *See Hurst v. Hantke*, 634 F.3d 409, 411 (7th Cir. 2011) (citation omitted) (holding that administrative remedies become unavailable "if essential elements of the procedure for obtaining it are concealed"). Even if it did, the Seventh Circuit has explained that not naming the defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Maddox*, 655 F.3d at 722. Here, Plaintiff's Grievance dated July 19, 2021, provided sufficient details to afford prison officials an opportunity to address Plaintiff's claims: it included the date of the incident, and sought relief for the action of the unnamed jail staff members who were involved in the decision to place Plaintiff in the same block as Summers. Accordingly, any alleged failure to identify defendants by name is immaterial.

Turning to the second challenge, the Court agrees that Plaintiff failed to wait for a substantive response to his compensation request in his Step 2 Grievance. The record shows that Havens advised Plaintiff that his compensation request was sent to the State Attorney's Office as an indication of suit at least twice: once verbally on August 27, 2021, and in writing on September 16, 2021, stating: "grievance indicating compensation will be forwarded to our State's Attorney's Office as it's an indication of suit . . . ." Doc. 48-1, p. 65. Plaintiff filed his Step 3 Grievance on September 16, 2021, only a day after being advised that his Step 2 Grievance was still pending. The Step 3 Grievance was immediately denied due to his failure to wait for a response to his Step 2 Grievance. Plaintiff filed his Step 4 Grievance, the very next day, on September 17, 2021.

The law is clear: an inmate must strictly comply with the grievance process, and "a prisoner

who does not *properly* take each step within the administrative process has failed to exhaust state remedies." *Pozo*, 286 F.3d at 1024 (emphasis added). Here, the grievance process required detainees to wait for a response to each step of the grievance before advancing to the next. Plaintiff did not comply with that requirement. It is true that the Handbook did not provide a timeframe for the jail's response to each grievance step. However, Plaintiff here had only waited for less than two months when he decided to proceed with his Step 3 Grievance. A two-month delay in responding to a grievance is not so unreasonable as to excuse Plaintiff's failure to properly follow the grievance process. This is especially true since the jail had already satisfied Plaintiff's injunctive relief and had advised him that the State Attorney's response to his compensation request was still pending.

However, the analysis does not end there. Defendants still have the burden to show that administrative procedures were available to Plaintiff. Williamson County Defendants insisted both in their brief and at the oral arguments that Plaintiff failed to comply with the grievance process because in his Steps 2, 3, and 4 Grievances, he only sought compensation. They argued that a request for compensation was a "demand"—not a grievance or even a "grievable" issue based on the Handbook.

Defendants' argument not only lacks merit but is also detrimental to their motion. First, the Handbook provides that detainees may file a grievance when: "*subjected to* a criminal act by another inmate, a prohibited act by a staff member, abuse, harassment, violation of civil rights, or denied privileges, without just cause." Doc. 48-1, p. 18 (emphasis added). There is nothing in the Handbook limiting a detainee's right to file a grievance based on the remedy sought. Here, Plaintiff filed a grievance for being subjected to a criminal act by another inmate and for staff

members violating his civil rights by failing to protect him. This falls squarely within the scope of grievable matters under the Handbook. *See also Booth*, 532 U.S. at 739, 121 S. Ct. at 1824, 149 L. Ed. 2d 958 ("one 'exhausts' processes, not forms of relief").

More importantly, however, Defendants' admission that the request for compensation fell outside the scope of the available remedies under the grievance process raises another question: whether the grievance process remained available to Plaintiff after his request for injunctive relief was fully satisfied. The Supreme Court addressed a similar issue in *Booth*. 532 U.S. at 734, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958. There, Booth brought a suit under Section 1983 for cruel and unusual punishment against correctional officers who allegedly assaulted him. *Booth*, 532 U.S. at 734, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958. In his suit, Booth sought monetary damages and various forms of injunctive relief, including transfer to another prison. *Id.* Prior to initiating a suit, Booth filed a first-step grievance but failed to appeal its denial as required under the administrative process in place. The grievance process in place did not provide for recovery of monetary damages. *Id.* The issue presented before the Supreme Court was whether the administrative remedies were available where "the administrative process ha[d] authority to take some action in response to a complaint, but not the remedial action an inmate demand[ed] to the exclusion of all other forms of redress." *Id.* at 736, 121 S. Ct. at 1822–23, 149 L. Ed. 2d 958. The Court responded affirmatively. *Id.* at 741; 121 S. Ct. at 1825, 149 L. Ed. 2d 958. Because there was no dispute in *Booth* that the grievance process could provide some remedy other than monetary relief, the Court concluded that Booth had failed to exhaust his administrative remedies.

Recently, in *Gilman*, the Seventh Circuit held that an administrative process that did not provide for monetary relief was unavailable to an inmate who had already obtained complete relief

for his medical condition.  *Gilman*, No. 24-1951, 2025 WL 400028, at *3.  The appellate court reversed the district court's finding that there was some other relief for the inmate through the grievance process in the form of "policy reforms or staff discipline," explaining that this would do "nothing to improve his own situation with respect to the subject of the grievance." *Id.* (citing *White v. Bukowski*, 800 F.3d 392, 396 (7th Cir. 2015)).

The Court finds this case distinguishable from *Booth* and more akin to *Gilman*.  The parties in *Booth* did not dispute that the prison could provide some sort of injunctive relief to remedy Booth's grievance.  Here, however, at the time Plaintiff filed his Step 2 Grievance, he had already received his requested injunctive relief in the form of a keep-separate order.  Defendants are adamant that the grievance process could not be used for monetary demands.  They fail to point to any other form of relief they could have provided in response to Plaintiff's grievance.  The Court could contemplate other forms of injunctive relief, such as disciplinary action against the correctional officers, that could potentially further warrant Plaintiff's safety.  However, Defendants did not provide any evidence or even argue to that effect.  By failing to explain what alternative remedy the jail could have provided Plaintiff besides the already ordered keep-separate order, Defendants failed to satisfy their burden to show that the administrative remedies remained available to Plaintiff.  Drawing all reasonable inferences in Plaintiff's favor, the Court finds that Defendants failed to show that the administrative process remained available to Plaintiff after his request for injunctive relief had been fully satisfied in response to his Step 1 Grievance.

Therefore, Defendants Crowson, Bandy, Gibbs, and Etherton's motion for summary judgment on exhaustion of administrative remedies is DENIED as to Count 6 of the First Amended Complaint.

**Count 7 against Reynolds and Crowson**

Reynolds and Crowson are entitled to summary judgment as to Count 7 of the First Amended Complaint.  Plaintiff claims that Crowson and Reynolds were deliberately indifferent to his serious medical needs by delaying or denying him adequate medical treatment for the injuries he sustained in the inmate attack on July 15, 2021.  There are two relevant grievances: Grievance dated August 3, 2021, and Plaintiff's Step 4 Grievance.

In his August 3, 2021, grievance, Plaintiff complained about not receiving a response to his Step 2 Grievance.  Doc. 28-2, pp. 27-28.  Plaintiff added at the end that he "never received prompt and adequate medical attention . . . [t]he night of the assault" and that he "asked to be taken to the ER and Crowson said the nurse said she would see me the next morning." *Id.*  When the nurse saw him the next day, she told him that she could not do anything about the injured teeth and gums.  *Id.* While this grievance contains sufficient information regarding Plaintiff's claim of denied treatment following the July 15, 2021, attack, Plaintiff did not comply with the jail's grievance process.  In his response, Plaintiff stated that this grievance was submitted as "another Step 3 grievance regarding, inter alia, the first Step 2 grievance that was still unresponded to." Doc. 58, p. 3.  Pinkerton responded that same day, stating that Plaintiff's grievance was invalid because Plaintiff had still not received a response to his Step 2 grievance.  *Id.*; Doc. 48-1, p. 21. Plaintiff repeated his complaint about the alleged denied treatment on his Step 4 Grievance, where he states:  "Nurse Reynolds failed to provide [him] with prompt and adequate medical attention, violating IL Admin Code 20.701.90, 5."  Doc. 48-2, pp. 43-44.  Pinkerton responded on September 20, 2021, stating: "You have received a response to your step 4 grievances concerning the same issue.  You are not following the proper grievance procedure. Grievance denied."  Doc. 48-1, pp.

123, 166-174.

At the hearing, Plaintiff admitted that Step 1 and Step 2 Grievances did not contain any reference to the alleged delay or denial of treatment for his physical injuries following the July 15, 2021, incident.  Because Plaintiff raised the alleged delayed treatment for the first time in a Step 3 grievance, Plaintiff did not properly exhaust his administrative remedies.  Bringing this issue up again in his Step 4 Grievance did nothing to cure his failure to raise the issues at the prior steps. Accordingly, Plaintiff failed to properly exhaust his administrative remedies for that claim. Defendants Reynolds and Crowson are entitled to summary judgment on County 7.

**Count 10 against Havens and Pinkerton**

Defendants Havens and Pinkerton are also entitled to summary judgment as to Count 10. Therein, Plaintiff claims that Havens and Pinkerton denied his requests for mental health care from July 22 until August 3, 2021.  There are only two relevant records.  First, Plaintiff submitted a grievance, dated July 26, 2021, wherein he stated he was in poor mental and psychological health and requested counseling.  Doc. 48-1, pp. 28, 89; Doc. 48-2, p. 13.  This is not a grievance, however, but rather a request for treatment.  On August 3, 2021, Plaintiff sent a grievance to Defendant Pinkerton stating: "Pinkerton, I have a few important questions for you. . . .  2) About a week ago I sent Havens a message thru a Step 2 grievance concerning my mental and emotional health. I asked him for counseling since I'm struggling quite a bit due to everything that has happening to me here. Unsurprisingly, he has not responded to this message either.  Doc. 48-1 pp. 22, 88.  Pinkerton responded later that day:  "We are . . . waiting on a mental health counselor to come to see you."  Doc. 48-1, pp. 21, 87.

Plaintiff did not address in his response his attempts to exhaust his claim under Count 10.

At the hearing, he did not point to any other grievances he filed for that claim. Because Plaintiff did not follow the four-step grievance process on the claim raised in Count 10 of the First Amended Complaint, Defendants Havens and Pinkerton are entitled to summary judgment.

As a final note, Plaintiff argued in his responses that he should be excused for any failure to comply with the grievance process because he is no longer housed in Williamson County, and thus, the administrative remedies are now unavailable to him. This argument lacks any merit. Exhaustion of administrative remedies is a precondition to filing a complaint. *See Perez,* 182 F.3d 532, 535 ( "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment."). Plaintiff filed this action on June 7, 2022, while still in Williamson County's custody. See Doc. 1, Doc. 48, p. 2. The plaintiff also complained that the grievance process was unavailable because it did not provide a reference number to facilitate easy tracking as the case progressed through the next grievance steps. However, it does not appear that this really inhibited his attempts to exhaust his administrative remedies. Rather, the reason Plaintiff failed to comply with the administrative process as to Counts 5, 7, and 10 is that he either did not include sufficient information in his grievances or he failed to follow the required grievance steps.

## Conclusion

For these reasons, Defendants Bandy, Crowson, Etherton, Gibbs, Havens, and Pinkerton's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 48) is **GRANTED in part and DENIED in part**. Defendant Reynolds' Motion for Summary Judgment for Failure to Exhaust Administrative Remedies (Doc. 49) is **GRANTED**. Count 5 of

the First Amended Complaint against Reynolds, Count 7 of the First Amended Complaint against Defendant Crowson and Reynolds, and Count 10 of the First Amended Complaint against Defendants Havens and Pinkerton are **DISMISSED without prejudice**.  Plaintiff survives summary judgment as to Count 6 of the First Amended Complaint.  The Clerk is **DIRECTED** to terminate Defendants Reynolds, Havens, and Pinkerton and enter judgment in accordance with this Order at the close of this case.

**IT IS SO ORDERED.**

**DATED: August 29, 2025**

_s/ Reona J. Daly_

**Hon. Reona J. Daly**
**United States Magistrate Judge**