EXHIBIT E

July 14, 2026

**Andrew Kim**
IFMK Law Ltd.
650 Dundee Road, 4th Floor
Northbrook, IL 60062

Re: *Leal v. Pinkerton, et al., Case No. 3:22-cv-01172-RJD*
Good Faith Rule 37 Meet-and-Confer Regarding Defendants' Discovery Responses

Dear Counsel:

I write pursuant to Federal Rule of Civil Procedure 37(a)(1) in a good-faith effort to resolve numerous deficiencies in Defendants' responses to Plaintiff's First Requests for Production of Documents, First Set of Interrogatories, and First Requests for Admission without the need for Court intervention. Rule 37 requires the parties to confer in good faith before a motion to compel is filed, and Plaintiff hopes these issues can be resolved through supplementation of the existing responses.

As you know, Plaintiff agreed to Defendants' request for an extension of time to respond to his written discovery requests. Despite that accommodation, Defendants served their discovery responses substantially later than the agreed extension. Plaintiff thereafter appeared for his deposition on June 26, 2026, before he had the opportunity to review Defendants' complete discovery responses. Prior to the deposition, Plaintiff expressed his concern that he had not yet received the discovery responses necessary to prepare adequately. Counsel responded that Plaintiff's deposition would depend upon his recollection of the facts rather than Defendants' discovery responses. Plaintiff nevertheless believes that the delayed and incomplete discovery responses materially impaired his ability to prepare for the deposition.

Having now carefully reviewed Defendants' responses, Plaintiff has identified numerous responses that are incomplete, evasive, or otherwise deficient under the Federal Rules of Civil Procedure. Plaintiff has made every effort to limit the issues raised in this letter to those that are material to the surviving Fourteenth Amendment failure-to-protect claim and that can reasonably be resolved without judicial intervention.

Several recurring deficiencies appear throughout Defendants' responses.

First, many objections consist of substantially identical boilerplate assertions that requests are "irrelevant," "overbroad," or "disproportionate" without explaining why the particular request is objectionable as applied to the facts of this case.

Second, numerous responses were provided collectively on behalf of all four Defendants rather than separately identifying each Defendant's individual knowledge, admissions, or factual basis for the response. Because Plaintiff directed separate discovery requests to each Defendant, collective responses frequently obscure what each Defendant personally admits, denies, or claims not to know.

1

Third, many responses simply refer Plaintiff to previously produced documents by Bates number or generally state that jail records, policies, or handbooks "speak for themselves" without identifying the specific documents or portions of those documents that purportedly answer the request.

Fourth, several interrogatory and request-for-admission responses assert a lack of knowledge or information without adequately indicating that a reasonable inquiry was conducted or identifying the records reviewed before asserting an inability to answer.

Finally, several Requests for Admission contain qualified admissions that do not fully admit or deny the specific matter requested, thereby leaving Plaintiff unable to determine what facts are actually disputed.

The purpose of this letter is not to restate every disagreement between the parties, but rather to identify those responses that Plaintiff believes should be supplemented in order to avoid unnecessary motion practice. Plaintiff respectfully requests that Defendants review the issues outlined below and provide supplemental responses where appropriate within ten (10) days of receipt of this letter. If the parties are unable to resolve these matters, Plaintiff intends to file an appropriate motion requesting the Court compel supplemental discovery responses and determine the sufficiency of Defendants' responses where authorized by the Federal Rules.

## I. Requests for Production

After reviewing Defendants' responses to Plaintiff's First Requests for Production of Documents, Plaintiff respectfully requests that Defendants supplement the following responses.

### Request for Production No. 1

Defendants objected to subparts (c) through (h) as irrelevant to the surviving failure-to-protect claim and referred Plaintiff to previously produced documents. Defendants further agreed only to produce additional records concerning the July 15, 2021 incident.

Plaintiff does not dispute that discovery must remain proportional to the surviving claim. However, Defendants' response fails to produce or identify numerous responsive documents directly relevant to Count VI, including records concerning Plaintiff's repeated reports of harassment and threats before July 15, 2021, the jail's response to those reports, and related grievances, kiosk communications, memoranda, emails, and notes concerning Plaintiff's requests for protection. These materials bear directly upon Defendants' knowledge of the substantial risk of harm to Plaintiff before the assault and therefore fall squarely within the scope of Rule 26.

Plaintiff requests that Defendants supplement their response by producing all nonprivileged responsive documents concerning Plaintiff's complaints of harassment, threats, requests for protection, housing concerns, and the July 15, 2021 assault, including any responsive emails, memoranda, notes, or electronic communications maintained by Williamson County Jail.

### Request for Production No. 2

2

Defendants limited their response to documents previously produced and objected to producing additional classification or separation records.

Plaintiff requests supplementation to include all nonprivileged records concerning any separation orders, keep-separate directives, housing alerts, classification records, housing decisions, or similar records relating to Plaintiff and Rex Summers before July 15, 2021. If no additional responsive records exist, Defendants should expressly state that a reasonable search was conducted and that no additional responsive records were located.

**Request for Production No. 3**

Defendants state that no January 2021 letter addressed to Sgt. Crowson and the jail nurse was located after a reasonable search.

Plaintiff requests that Defendants identify the scope of the search performed, including where the search was conducted, which custodians or files were searched, and whether archived paper records, inmate correspondence files, administrative files, or electronic repositories were examined. Plaintiff also requests that Defendants identify the individual(s) who conducted the search.

**Request for Production No. 4**

Defendants objected to producing communications beyond those previously disclosed and limited any supplementation to records directly concerning the July 15, 2021 incident.

Plaintiff requests supplementation to include all nonprivileged chirp messages, kiosk communications, internal electronic communications, and related records concerning Plaintiff's reports of harassment, threats, requests for protection, housing concerns, and communications regarding the July 15, 2021 incident through July 15, 2021. Plaintiff does not presently seek privileged attorney-client communications.

**Request for Production No. 5**

Defendants responded that no Officer Baxter notes or records were located.

Because Officer Baxter allegedly obtained from Plaintiff the identities of inmates who were threatening him immediately before Plaintiff's transfer from E Block, Plaintiff requests that Defendants identify the scope of the search conducted and supplement the response if any notes, memoranda, shift logs, incident reports, housing records, or other responsive documents exist.

**Request for Production Nos. 10, 11, and 12**

Plaintiff requests supplementation regarding:

- the January 2021 letter requesting protection;

- Officer Baxter's notes or records concerning Plaintiff's reports of harassment and the identities of threatening inmates;
- records concerning Plaintiff's transfer from E Block to D Block, including any documents reflecting the reason for that transfer.

These records concern Defendants' knowledge of Plaintiff's reported safety concerns before the July 15, 2021 assault and are directly relevant to the surviving failure-to-protect claim.

**Request for Production No. 15**

Defendants limited production to records concerning the July 15, 2021 incident and objected to the remaining subparts.

Plaintiff requests supplementation to identify and produce all nonprivileged written or recorded statements concerning Plaintiff's reports of harassment, threats, requests for protection, housing decisions, the July 15, 2021 assault, witness statements, incident reports, supervisory reports, investigative materials, and other records directly relating to the surviving failure-to-protect claim.

For any responsive documents withheld on the basis of privilege, Plaintiff requests that Defendants provide a privilege log sufficient to comply with Rule 26(b)(5).

**II. Interrogatories**

Plaintiff respectfully requests that Defendants supplement the following interrogatory responses.

**Interrogatory No. 1**

Plaintiff requested that each Defendant identify every person known to have knowledge concerning Plaintiff's reports of harassment, the July 15, 2021 assault, and related matters.

Although Defendants identified several individuals with knowledge of the July 15, 2021 incident, they uniformly refused to answer the remaining subparts based upon boilerplate relevance objections. Plaintiff respectfully submits that persons possessing knowledge of Plaintiff's repeated complaints of harassment, requests for protection, housing decisions, separation requests, and other events leading to the July 15, 2021 assault are directly relevant to Plaintiff's surviving failure-to-protect claim because they bear upon Defendants' knowledge of the substantial risk of harm before the assault occurred.

Plaintiff further requests that each Defendant separately identify every individual known to possess relevant information concerning Plaintiff's pre-assault complaints and requests for protection.

**Interrogatory No. 2**

Each Defendant states either that he or she has no knowledge of actions taken in response to Plaintiff's complaints or, in Defendant Etherton's case, asserts that Plaintiff never provided a list of inmates before July 15, 2021.

Plaintiff requests supplementation because the interrogatory seeks the actions taken in response to Plaintiff's complaints, not merely each Defendant's personal recollection. To the extent responsive information is available through jail records, reports, electronic records, supervisory files, or other institutional sources reasonably available to Defendants, those sources should be consulted before providing a final answer. Defendants should also identify any records reviewed in preparing their responses.

**Interrogatory No. 3**

Each Defendant answered only that he or she had no knowledge why Plaintiff was moved from E Block to D Block.

Plaintiff requested whether the transfer occurred because of harassment, threats, intimidation, or safety concerns, together with the identity of the decision-maker, the date, the reason for the transfer, and the persons involved.

Plaintiff requests supplementation identifying any available institutional records reflecting the reason for Plaintiff's transfer, the officials involved in that decision, and the records relied upon in answering the interrogatory.

**Interrogatory No. 4**

Each Defendant states only that he or she was unaware of any formal separation order or similar restriction between Plaintiff and Rex Summers.

Plaintiff requests supplementation identifying the records reviewed in reaching that conclusion and clarifying whether Defendants distinguish between formal written separation orders and informal housing restrictions, separation practices, or verbal directives.

**Interrogatory No. 5**

Each Defendant states that he or she has no personal knowledge of communications between jail personnel and Plaintiff's criminal defense attorney, Steven Williams.

Plaintiff requests supplementation identifying whether Defendants made inquiry of available jail records, logs, memoranda, telephone records, correspondence, or supervisory personnel before disclaiming knowledge.

**Interrogatory No. 6**

Plaintiff requested information concerning Officer Baxter's receipt of Plaintiff's list of threatening inmates.

Defendants uniformly responded that they possess no personal knowledge.

Plaintiff requests supplementation identifying whether any reports, shift logs, housing records, memoranda, or other institutional records were reviewed concerning Officer Baxter's interactions with Plaintiff before answering the interrogatory.

**Interrogatory No. 8**

Three Defendants state they possess no personal knowledge concerning the investigation of the July 15, 2021 assault, while Defendant Crowson identifies only his shift report.

Plaintiff requests supplementation identifying:

- who investigated the assault;
- whether witness statements were collected;
- whether video recordings were reviewed;
- whether investigative reports exist;
- and whether Defendants reviewed those materials before responding.

**Interrogatory No. 11**

Defendants object to identifying inmates housed in E Block except for July 15, 2021.

Plaintiff respectfully requests supplementation at least as to the January 2021 transfer and July 15, 2021, because those housing assignments directly relate to Plaintiff's allegations concerning prior notice, potential witnesses, housing decisions, and the assault itself.

**Interrogatory No. 12**

Rather than identifying personnel working on the requested dates, Defendants merely described the general job duties of the four named Defendants.

That response does not answer the interrogatory.

Plaintiff requests supplementation identifying the correctional officers, supervisors, administrative personnel, trustees, medical staff, and other personnel assigned to work on the relevant dates, together with their duties and assignments.

**Interrogatory No. 15**

Defendants object to the majority of the interrogatory and provide virtually no substantive identification of responsive statements.

Plaintiff requests supplementation identifying all nonprivileged written, recorded, electronic, audio, video, or digital statements concerning Plaintiff's reports of harassment, requests for

protection, the July 15, 2021 assault, witness statements, investigative reports, and other statements directly relating to the surviving failure-to-protect claim.

Plaintiff further requests that each Defendant provide separate responses identifying information known to that Defendant individually rather than relying upon substantially identical collective responses prepared on behalf of all Defendants.

## III. Requests for Admission

Plaintiff respectfully requests that Defendants supplement the following Requests for Admission.

### Request for Admission No. 1

Plaintiff requested that each Defendant admit that Plaintiff complained to jail staff about harassment or threats before July 15, 2021.

Defendants responded collectively, objected that the request was vague, and admitted only that Plaintiff made "generalized complaints."

Plaintiff requests supplementation because the response does not fairly answer the request. The Request did not ask Defendants to characterize Plaintiff's complaints as "generalized" or otherwise. Rather, it simply requested an admission that Plaintiff complained to jail staff about harassment or threats before July 15, 2021.

Additionally, the response was made collectively on behalf of all four Defendants. Plaintiff requests that each Defendant separately admit or deny the request based upon that Defendant's own knowledge after a reasonable inquiry.

### Request for Admission No. 2

Plaintiff requested that Defendants admit Plaintiff was moved from E Block to D Block in January 2021 because of safety concerns.

Defendants admitted the transfer occurred but stated they lacked sufficient knowledge to admit or deny the reason for the transfer.

Plaintiff requests supplementation because Defendants did not identify whether they conducted a reasonable inquiry into available jail records before asserting an inability to admit or deny. If institutional records exist identifying the reason for Plaintiff's transfer, those records should be reviewed before responding.

### Request for Admission No. 3

Plaintiff requested that Defendants admit Rex Summers was housed in the same Protective Custody unit as Plaintiff before the July 15, 2021 assault.

Rather than admitting or denying the request, Defendants admitted only that Rex Summers was assigned to E Pod on July 15, 2021.

That response does not fairly respond to the substance of the request. Plaintiff requests that Defendants admit or deny whether Plaintiff and Rex Summers were housed together in E Pod before the assault or otherwise explain the factual basis for any denial.

**Request for Admission No. 8**

Plaintiff requested that Defendants admit Administrative Segregation and Protective Custody inmates were housed together in E Block during 2021.

Defendants objected to the phrase "housed together" but admitted that inmates with different classifications could be housed in E Block depending upon institutional needs.

Because Defendants have effectively acknowledged that inmates of different classifications could be housed within E Block, Plaintiff requests that Defendants supplement their response by clearly admitting or denying whether Administrative Segregation inmates and Protective Custody inmates were, in fact, housed within E Block during the relevant period.

**Collective Responses**

Finally, Plaintiff respectfully requests that Defendants supplement all Requests for Admission that were answered collectively on behalf of all Defendants.

Plaintiff served separate Requests for Admission directed to each Defendant individually. Accordingly, each Defendant should separately admit, deny, or qualify each request based upon that Defendant's own knowledge and the reasonable inquiry required by Rule 36, rather than relying upon a single response that obscures each Defendant's individual position.

**Conclusion**

Plaintiff respectfully requests that Defendants serve supplemental responses within ten (10) days of receipt of this letter.

If Defendants disagree with any of the issues raised herein, Plaintiff requests that counsel respond in writing by email or regular mail identifying the specific basis for any continued objection or refusal to supplement. Plaintiff believes that resolving these issues through written correspondence will create a clear record of the parties' respective positions and may avoid unnecessary motion practice.

If Defendants decline to supplement their responses or the parties are otherwise unable to resolve these discovery disputes through written correspondence, Plaintiff will seek appropriate relief from the Court, including a motion to compel and any other relief authorized by the Federal Rules of Civil Procedure.

Thank you for your attention to these matters. Plaintiff looks forward to your written response.

Respectfully submitted,

/s/Jorge Luis Leal
Plaintiff, Pro Se



**HOSEUK KIM (ANDREW)**
Associate

**IFMK Law, Ltd.**

650 Dundee Road, Suite 475
Northbrook, IL 60062

 847-291-9673

 akim@ifmklaw.com

*Via Electronic Mail*

**Jorge Leal**
1286 Wind Crest Drive
Union City TN  38261
jorgelleal@myyahoo.com

July 27, 2026

Re:     Response to Plaintiff's Rule 37 Deficiency Letter – *Leal v. Pinkerton, et al.*,
2022-cv-00172.

Mr. Leal:

Defendants respond to Plaintiff's Rule 37 letter received via email on July 14, 2026 at 7:21 PM regarding Defendants' Responses to Plaintiff's First Requests for Production, First Set of Interrogatories, and First Requests for Admission. Defendants have carefully reviewed Plaintiff's concerns and, although they disagree with many of Plaintiff's assertions, have further evaluated their discovery responses in an effort to resolve any genuine disputes without Court intervention.

As an initial matter, Defendants reject Plaintiff's repeated characterization of their objections as "boilerplate." The objections asserted are tailored to the individual requests, identify the specific deficiencies presented by the requests, and preserve valid objections under the Federal Rules of Civil Procedure. Plaintiff's disagreement with those objections does not render them improper.

Defendants further note that discovery responses must be evaluated in light of the sole remaining claim in this action: the Fourteenth Amendment failure-to-protect claim arising from the July 15, 2021 incident. Many of Plaintiff's requests seek information concerning dismissed claims, post-incident events, or matters that are not relevant or proportional to the needs of the remaining claim. Defendants therefore continue to stand on those objections.

Nevertheless, after conducting an additional reasonable inquiry, Defendants have identified certain clarifications and supplemental responses where appropriate. With respect to the

interrogatories, Defendants have supplemented their answers with information reasonably available to each responding Defendant and have identified previously produced documents, where applicable, that contain responsive information. Likewise, Defendants have clarified certain Requests for Admission to more precisely state each Defendant's position. Defendants believe these supplemental responses fully satisfy their discovery obligations under Rules 26, 33, 34, and 36 and demonstrate their good-faith effort to resolve the issues raised in Plaintiff's correspondence.

Defendants respond to Plaintiff's specific contentions as follows:

---

Dear Counsel:

I write pursuant to Federal Rule of Civil Procedure 37(a)(1) in a good-faith effort to resolve numerous deficiencies in Defendants' responses to Plaintiff's First Requests for Production of Documents, First Set of Interrogatories, and First Requests for Admission without the need for Court intervention. Rule 37 requires the parties to confer in good faith before a motion to compel is filed, and Plaintiff hopes these issues can be resolved through supplementation of the existing responses.

**RESPONSE:** **Defendants acknowledge their obligation to confer in good faith and remain willing to address any specific, legitimate discovery issue. Plaintiff's disagreement with Defendants' objections, however, does not establish that the responses are deficient or that supplementation is required. As explained below, many of Plaintiff's demands seek discovery concerning dismissed claims, severed allegations, nonparties, and events outside the scope of the sole remaining claim**

As you know, Plaintiff agreed to Defendants' request for an extension of time to respond to his written discovery requests. Despite that accommodation, Defendants served their discovery responses substantially later than the agreed extension. Plaintiff thereafter appeared for his deposition on June 26, 2026, before he had the opportunity to review Defendants' complete discovery responses. Prior to the deposition, Plaintiff expressed his concern that he had not yet received the discovery responses necessary to prepare adequately. Counsel responded that Plaintiff's deposition would depend upon his recollection of the facts rather than Defendants' discovery responses. Plaintiff nevertheless believes that the delayed and incomplete discovery responses materially impaired his ability to prepare for the deposition.

**RESPONSE:** **Plaintiff's account does not establish any discovery deficiency or resulting prejudice. Plaintiff proceeded with his deposition, which**

concerned his own allegations, experiences, and recollection of the relevant events. Plaintiff does not identify any question he was unable to answer, any testimony affected by the timing of Defendants' responses, or any particular document necessary for his deposition preparation. A generalized assertion that his preparation was "materially impaired" is insufficient.

Having now carefully reviewed Defendants' responses, Plaintiff has identified numerous responses that are incomplete, evasive, or otherwise deficient under the Federal Rules of Civil Procedure. Plaintiff has made every effort to limit the issues raised in this letter to those that are material to the surviving Fourteenth Amendment failure-to-protect claim and that can reasonably be resolved without judicial intervention.

**RESPONSE:** **This paragraph consists of conclusory characterizations rather than an identifiable discovery dispute. No separate response is necessary.**

Several recurring deficiencies appear throughout Defendants' responses.

First, many objections consist of substantially identical boilerplate assertions that requests are "irrelevant," "overbroad," or "disproportionate" without explaining why the particular request is objectionable as applied to the facts of this case.

**RESPONSE:** **Defendants disagree with Plaintiff's general characterization of their objections as "boilerplate" and "without explaining why the particular request is objectionable". Each objection identified concrete, request-specific defects, including attempts to obtain discovery concerning claims already dismissed by the Court, allegations severed from or not pending in this action, post-incident matters unrelated to the surviving Fourteenth Amendment failure-to-protect claim arising from the July 15, 2021 incident, confidential third-party information, privileged material, and requests disproportionate to the needs of the case.**

**Plaintiff's disagreement with those objections does not render them "boilerplate".**

Second, numerous responses were provided collectively on behalf of all four Defendants rather than separately identifying each Defendant's individual knowledge, admissions, or factual basis for the response. Because Plaintiff directed separate discovery requests to each Defendant, collective responses frequently obscure what each Defendant personally admits, denies, or claims not to know.

**RESPONSE:** **Plaintiff's assertion is incorrect and, notably, does not identify a**

single request to which this criticism purportedly applies. Each Defendant separately answered and verified his or her interrogatory responses. The responses to Plaintiff's Requests for Admission expressly identify each responding Defendant by name. The Requests for Production were answered collectively because they seek documents within Defendants' possession, custody, or control, not individualized testimony concerning each Defendant's personal knowledge.

Third, many responses simply refer Plaintiff to previously produced documents by Bates number or generally state that jail records, policies, or handbooks "speak for themselves" without identifying the specific documents or portions of those documents that purportedly answer the request.

**RESPONSE:** Defendants disagree with Plaintiff's assertion that Defendants' production of the Williamson County Jail Regulations (WC 1198-1208) and the Inmate Disciplinary Code, and Inmate Handbook (WC 1209-1225) somehow constitute a deficient discovery response. Notably, the quoted "speak for themselves" response Plaintiff cites to appears in Defendants' responses to Interrogatories 10 and 13, neither of which Plaintiff identifies below as requiring supplementation. Regardless, Defendants maintain that the produced records do not require supplementation.

In response to Interrogatory No. 10, each Defendant provided a substantive answer explaining the considerations governing housing and classification decisions and then referred Plaintiff to the previously produced jail rules, inmate handbook, and classification and housing records.

In response to Interrogatory No. 13, each Defendant asserted a specific relevance objection, stated that he or she had no personal knowledge of the alleged October 2021 system update, and identified the previously produced Williamson County Jail Regulations and Inmate Handbook containing provisions regarding inmate communications, grievances, and related procedures.

A reference to previously produced, Bates-numbered documents are neither evasive nor deficient where the documents are identified, and the response otherwise answers the interrogatory based on the responding Defendant's knowledge. Nevertheless, to eliminate any claimed uncertainty, and without conceding that supplementation is required, Defendants direct Plaintiff to WC 1205-1206 and WC 1218-1222 with respect to Interrogatory No. 10, and WC 1200, WC 1202, and

Fourth, several interrogatory and request-for-admission responses assert a lack of knowledge or information without adequately indicating that a reasonable inquiry was conducted or identifying the records reviewed before asserting an inability to answer.

<u>RESPONSE</u>: Plaintiff's characterization is contradicted by the responses themselves. Out of Plaintiff's ten Requests for Admission, only the responses to RTA Nos. 2 and 9 state Defendants lacked sufficient knowledge or information to admit or deny a portion of the request. Defendants' "General Objection No. 5" expressly states that all responses were based on information presently known after reasonable inquiry. Similar to the previous paragraph, despite relying on generalized references to purportedly inadequate "lack of knowledge" responses, Plaintiff does not identify RTA No. 9 among the specific Requests for Admission he later claims require supplementation. Plaintiff cannot rely on an unnamed response to support a broad accusation while declining to identify what, specifically, is supposedly deficient.

As to RTA No. 2, Defendants admitted that Plaintiff was moved from E Block to D Block in January 2021, but lacked sufficient information to admit Plaintiff's additional assertion that the transfer occurred because of unspecified "safety concerns." That response clearly identifies both the fact admitted and the limited issue Defendants could not admit.

RTA No. 9 concerned an alleged October 2021 computer-system update, an event occurring months after the incident underlying the sole remaining claim and outside the individual Defendants' personal knowledge. Plaintiff does not separately identify Request No. 9 below as requiring supplementation.

The same is true of the interrogatory answers. Each Defendant separately answered and verified his or her responses, and each Defendant expressly stated in "General Objection No. 8" that the answers were based on information presently known after reasonable inquiry. The cited answers accurately distinguished between matters within each Defendant's personal knowledge and matters involving decisions, communications, or conduct by other jail personnel. Defendant Etherton also provided additional information where his knowledge differed from that of the other Defendants.

Plaintiff's disagreement with the substance of those answers does not establish that no inquiry was conducted, nor does it require Defendants to speculate, adopt Plaintiff's factual assumptions, or claim knowledge they do not possess. Plaintiff also identifies no interrogatory that required Defendants to provide an itemized list of every document, database, or record consulted in preparing their answers. No supplementation is warranted based on this generalized assertion.

Finally, several Requests for Admission contain qualified admissions that do not fully admit or deny the specific matter requested, thereby leaving Plaintiff unable to determine what facts are actually disputed.

<u>RESPONSE:</u>    Plaintiff's generalized assertion that Defendants' qualified responses leave him unable to determine what is disputed is incorrect. The specific Requests for Admission Plaintiff later identified as Request Nos. 1, 2, 3, and 8, each received a clear response identifying precisely what Defendants admitted and what they could not admit because of vague, ambiguous, or overly broad language.

In response to Request No. 1, Defendants objected to Plaintiff's undefined references to "jail staff," "harassment," and "threats," but nevertheless admitted that Plaintiff made generalized complaints before July 15, 2021. The qualification identifies the scope of the admission; it does not obscure it.

In response to Request No. 2, Defendants admitted that Plaintiff was moved from E Block to D Block in January 2021. They lacked sufficient knowledge or information, however, to admit Plaintiff's additional assertion that the transfer occurred because of unspecified "safety concerns." The response therefore clearly establishes that the transfer itself is admitted, while its alleged reason is not.

In response to Request No. 3, Defendants objected because Plaintiff did not identify what he meant by the same "Protective Custody unit." Defendants nonetheless admitted the concrete fact supported by the available information: Rex Summers was assigned to E Pod on July 15, 2021. Defendants were not required to adopt Plaintiff's undefined characterization of E Pod as a particular "Protective Custody unit."

In response to Request No. 8, Defendants objected that "housed together" could mean placement in the same cell, the same block, or some other arrangement, and that the phrase "during 2021" encompassed an entire year without a relevant date or date range.

Defendants nevertheless admitted that inmates with different classifications could be housed in E Block during 2021 depending on available space, safety, security, classification, staffing, operational needs, medical issues, separation concerns, and COVID-related limitations. That response directly states what Defendants admit while declining to adopt the broader and undefined proposition presented by Plaintiff.

These qualifications do not prevent Plaintiff from identifying the disputed facts. To the contrary, they define them. Plaintiff may disagree with the substance of the responses, but that disagreement does not render the responses evasive or require Defendants to admit propositions broader than the facts supported by their knowledge and reasonable inquiry. No supplementation is warranted based on Plaintiff's generalized characterization, and Defendants' specific responses are provided below.

The purpose of this letter is not to restate every disagreement between the parties, but rather to identify those responses that Plaintiff believes should be supplemented in order to avoid unnecessary motion practice. Plaintiff respectfully requests that Defendants review the issues outlined below and provide supplemental responses where appropriate within ten (10) days of receipt of this letter. If the parties are unable to resolve these matters, Plaintiff intends to file an appropriate motion requesting the Court compel supplemental discovery responses and determine the sufficiency of Defendants' responses where authorized by the Federal Rules.

<u>RESPONSE:</u> Defendants have carefully reviewed Plaintiff's letter and the individual discovery responses identified below. That review required substantial time and effort because many of Plaintiff's assertions are generalized, unsupported, or contradicted by the responses themselves. As such, we reiterate that the defendants, by their available resources, conducted an ad-nauseum investigation of all available documentation relevant to this case, including allegations made by Plaintiff, in conducting a reasonable and thorough search of all available files.

Defendants' discovery responses were detailed, request-specific, and appropriately limited to the sole remaining claim. Although numerous requests were compound, contained multiple subparts, incorporated vague or expansive definitions, or sought information concerning dismissed claims and unrelated events, Defendants nevertheless provided substantive responses and identified responsive materials where appropriate.

As a reminder to Plaintiff, a Rule 37 letter should identify a concrete deficiency in a particular response and explain the specific supplementation sought. General accusations that Defendants' responses are "incomplete," "evasive," or "boilerplate" do not satisfy that obligation and unnecessarily require Defendants to reconstruct and respond to disputes Plaintiff has not clearly articulated.

As explained below, most of the alleged deficiencies do not provide a valid basis for supplementation. Defendants remain willing to address any specific and legitimate discovery issue, but Plaintiff's disagreement with a response or objection does not, standing alone, render it deficient. Plaintiff should therefore carefully consider the responses and explanations provided in this letter before pursuing unnecessary motion practice and future requests for supplementing discovery responses.

---

## I. Requests for Production

After reviewing Defendants' responses to Plaintiff's First Requests for Production of Documents, Plaintiff respectfully requests that Defendants supplement the following responses.

**RESPONSE:**     As the responses below demonstrate, Plaintiff has not identified any substantive deficiency requiring supplementation. Defendants stand on their objections and previously served responses.

To the extent Defendants provide additional citations or clarification below, they do so solely to eliminate Plaintiff's claimed uncertainty and avoid further unnecessary dispute, not because the original responses were incomplete or improper. Many of Plaintiff's demands amount to requests that Defendants adopt his preferred wording, provide unnecessary descriptions of their search efforts, or include certifications not required by the Federal Rules.

Plaintiff's dissatisfaction with the form or phrasing of a response does not establish a discovery violation.

**Request for Production No. 1**

Defendants objected to subparts (c) through (h) as irrelevant to the surviving failure-to-

protect claim and referred Plaintiff to previously produced documents. Defendants further agreed only to produce additional records concerning the July 15, 2021 incident.

Plaintiff does not dispute that discovery must remain proportional to the surviving claim. However, Defendants' response fails to produce or identify numerous responsive documents directly relevant to Count VI, including records concerning Plaintiff's repeated reports of harassment and threats before July 15, 2021, the jail's response to those reports, and related grievances, kiosk communications, memoranda, emails, and notes concerning Plaintiff's requests for protection. These materials bear directly upon Defendants' knowledge of the substantial risk of harm to Plaintiff before the assault and therefore fall squarely within the scope of Rule 26.

Plaintiff requests that Defendants supplement their response by producing all nonprivileged responsive documents concerning Plaintiff's complaints of harassment, threats, requests for protection, housing concerns, and the July 15, 2021 assault, including any responsive emails, memoranda, notes, or electronic communications maintained by Williamson County Jail.

**RESPONSE:** **Defendants stand on their objections and response.**

> **Plaintiff acknowledges the proportionality requirement but disregards it. Request No. 1 was not confined to discovery relevant to the surviving failure-to-protect claim. It combined eight separate subparts and sought "all" grievances, communications, notes, memoranda, emails, and other records concerning matters that included:**
>
> - **RTP 1(c): an alleged August 12, 2021 shakedown occurring <u>28 days after the incident</u>;**
> - **RTP 1(d): alleged retaliatory conditions and housing practices beginning as early as August 1, 2026, <u>17 days after the incident</u>, extending through February 2022, <u>201 days after the incident</u>;**
> - **RTP 1(e): the alleged denial of grievance copies after the incident on an unspecified date;**
> - **RTP 1(f): an alleged January 1, 2022 retaliatory cell search involving nonparties, <u>occurring 170 days after the incident</u>;**
> - **RTP 1(g): an alleged January 26, 2022 legal-mail incident, occurring <u>195 days after the incident</u>; and**
> - **RTP 1(h): an alleged February 6, 2022 incident involving the copying of legal documents, occurring <u>206 days after the incident</u>.**
>
> **Those matters concern dismissed claims, severed allegations,**

nonparties, and events occurring after the July 15, 2021 incident. Defendants properly objected to subparts (c) through (h) because they are outside the scope of the sole remaining claim.

Defendants also did not merely refer Plaintiff generally to unspecified records. They identified specific, previously produced materials by Bates number, including the July 15, 2021 Incident Report at WC 001-007; Grievances and PREA records at WC 008-288; certified kiosk grievances at WC 1232-1264; and additional grievances at WC 1453-1498. Those productions include records concerning Plaintiff's complaints and the July 15, 2021 incident.

Plaintiff's current demand also materially recasts the original request. He now seeks every document concerning broadly defined "housing concerns," together with all emails, memoranda, notes, and electronic communications maintained by the Williamson County Jail, without identifying relevant custodians, repositories, search terms, or reasonable temporal limitations. That is not a request for clarification of Defendants' response; it is an attempt to expand the request after the fact.

Plaintiff has not proposed, and the parties have not agreed upon, any ESI protocol identifying the custodians, electronic repositories, relevant date range, search methodology, search terms, or form of production applicable to the additional ESI he now demands. More fundamentally, Plaintiff's generalized request for all emails, notes, and electronic communications maintained by the Williamson County Jail does not describe the additional ESI sought with reasonable particularity or provide parameters from which a reasonable and proportional search could be conducted.

Consistent with their prior response and continuing discovery obligations, Defendants will produce any additional nonprivileged, responsive documents located through a reasonable and proportional search. Plaintiff has not identified any existing responsive document that was withheld or any substantive deficiency requiring further supplementation.

**Request for Production No. 2**

Defendants limited their response to documents previously produced and objected to producing additional classification or separation records.

Plaintiff requests supplementation to include all nonprivileged records concerning any separation orders, keep-separate directives, housing alerts, classification records, housing decisions, or similar records relating to Plaintiff and Rex Summers before July 15, 2021. If no additional responsive records exist, Defendants should expressly state that a reasonable search was conducted and that no additional responsive records were located.

**RESPONSE:** **Defendants have conducted a reasonable search for nonprivileged records concerning any separation order, keep-separate directive, housing alert, or similar restriction involving Plaintiff and Rex Summers before July 15, 2021. No additional responsive records were located beyond the materials previously produced.**

**Defendants therefore stand on their objections and response. Defendants will supplement the response if additional responsive records are subsequently located.**

### Request for Production No. 3

Defendants state that no January 2021 letter addressed to Sgt. Crowson and the jail nurse was located after a reasonable search.

Plaintiff requests that Defendants identify the scope of the search performed, including where the search was conducted, which custodians or files were searched, and whether archived paper records, inmate correspondence files, administrative files, or electronic repositories were examined. Plaintiff also requests that Defendants identify the individual(s) who conducted the search.

**RESPONSE:** **Defendants' response already states that a reasonable search and inquiry were conducted and that the January 2021 letter described by Plaintiff was not located. The Federal Rules do not require a responding party to provide a narrative of every step taken in an unsuccessful document search.**

**Nevertheless, in an effort to resolve this issue, Defendants state that the search included the following sources: all documents, records, grievances, housing records, and documents related to Jorge Leal throughout the duration of his time at Williamson County Jail. Lieutenant North conducted the search.**

**No responsive January 2021 letter addressed to Sgt. Crowson and a jail nurse was located. Defendants cannot produce a document merely because Plaintiff alleges that it once existed. Defendants will supplement their response if the document is later located.**

**Request for Production No. 4**

Defendants objected to producing communications beyond those previously disclosed and limited any supplementation to records directly concerning the July 15, 2021 incident.

Plaintiff requests supplementation to include all nonprivileged chirp messages, kiosk communications, internal electronic communications, and related records concerning Plaintiff's reports of harassment, threats, requests for protection, housing concerns, and communications regarding the July 15, 2021 incident through July 15, 2021. Plaintiff does not presently seek privileged attorney-client communications.

RESPONSE:     Defendants stand on their objections and response.

> Plaintiff's chirp messages and related communications have already been produced at WC 285-1193. Relevant grievance and kiosk materials have also been produced at WC 008-284 and WC 1232-1264. These materials include communications generated before July 15, 2021.
>
> Plaintiff's present demand also materially recasts Request No. 4. The original request sought all communications from December 2020 through March 2022 concerning eight broad categories, including grievances, legal matters, retaliation allegations, and communications with Plaintiff's criminal defense attorney. Plaintiff now adds broadly defined "housing concerns" and "requests for protection" while demanding all internal electronic communications maintained by the Williamson County Jail through July 15, 2021. A Rule 37 letter is not a vehicle to rewrite or expand the original discovery request
>
> Plaintiff has not proposed, and the parties have not agreed upon, any ESI protocol identifying the custodians, electronic repositories, relevant date range, search methodology, search terms, or form of production applicable to the additional ESI he now demands. More fundamentally, Plaintiff's generalized request for all emails, notes, internal communications, and other electronic records maintained by the Williamson County Jail does not describe the additional ESI sought with reasonable particularity or provide parameters from which a reasonable and proportional search could be conducted.
>
> Defendants are not required to conduct an open-ended search of unidentified custodians and electronic repositories based solely on Plaintiff's unsupported assertion that additional communications must exist. Defendants therefore decline to supplement their response

or undertake the undefined ESI search Plaintiff now demands. Defendants' privilege and proportionality objections remain fully preserved.

**Request for Production No. 5**

Defendants responded that no Officer Baxter notes or records were located.

Because Officer Baxter allegedly obtained from Plaintiff the identities of inmates who were threatening him immediately before Plaintiff's transfer from E Block, Plaintiff requests that Defendants identify the scope of the search conducted and supplement the response if any notes, memoranda, shift logs, incident reports, housing records, or other responsive documents exist.

**RESPONSE:** Plaintiff's Rule 37 letter materially recasts Request No. 5. The original request sought only notes, logs, memoranda, lists, notebooks, or records "created by Officer Baxter" relating to Plaintiff's identification of inmates who allegedly harassed or threatened him. Plaintiff now demands shift logs, incident reports, housing records, and other documents without regard to who created them. A Rule 37 letter is not a vehicle to rewrite or expand the original request.

Defendants' response already states that a reasonable search and inquiry were conducted and that no responsive Officer Baxter record was located. Defendants are not required to provide a narrative of every step taken in an unsuccessful document search. More importantly, Plaintiff's factual premise is not supported by Defendants' discovery responses. Defendant Etherton stated that he, not Officer Baxter, asked Plaintiff in January 2021 to provide a list of persons from whom Plaintiff sought separation, and Plaintiff did not provide that list before July 15, 2021. Each Defendant likewise stated that he or she has no personal knowledge that Officer Baxter obtained such a list.

No notes, logs, memoranda, lists, notebooks, or other records created by Officer Baxter reflecting Plaintiff's identification of alleged threats were located. Plaintiff's allegation that such a record must exist does not make it so. No supplementation is warranted. Defendants will supplement if a responsive document is later discovered.

**Request for Production Nos. 10, 11, and 12**

Plaintiff requests supplementation regarding:

- the January 2021 letter requesting protection;
- Officer Baxter's notes or records concerning Plaintiff's reports of harassment and the identities of threatening inmates;
- records concerning Plaintiff's transfer from E Block to D Block, including any documents reflecting the reason for that transfer.

These records concern Defendants' knowledge of Plaintiff's reported safety concerns before the July 15, 2021 assault and are directly relevant to the surviving failure-to-protect claim.

**RESPONSE:** **Plaintiff's grouped demand is not a challenge to Requests Nos. 10, 11, and 12 at all. It seeks three categories of documents that those requests did not ask for. Plaintiff cannot manufacture a discovery deficiency by relabeling unrelated requests in a Rule 37 Letter.**

**Request No. 10 concerns the August 12, 2021 DOC shakedown and allegedly confiscated documents.**

**Request No. 11 concerns E Block housing and classification rosters from July 2021 through March 2022.**

**Request No. 12 concerns jail policies and training materials.**

**The alleged January 2021 letter and alleged Officer Baxter records were requested, respectively, in Requests Nos. 3 and 5, and Defendants have addressed those requests separately above. Plaintiff may not use Requests Nos. 10, 11, and 12 to obtain a second response to different requests.**

**Defendants therefore stand on their respective objections and responses to Requests Nos. 10, 11, and 12. Defendants nevertheless note that Plaintiff's cell-assignment history has already been produced at WC 1194-1197, documenting his housing assignments, and relevant jail policies were produced at WC 1198-1225. Consistent with their response to Request for Admission No. 2, Defendants admit only that Plaintiff was moved from E Block to D Block in January 2021; they lack sufficient information to admit or deny that the transfer occurred because of unspecified "safety concerns." Defendants therefore stand on their objections and responses to Requests Nos. 10, 11, and 12. No supplementation is warranted.**

**Request for Production No. 15**

Defendants limited production to records concerning the July 15, 2021 incident and objected to the remaining subparts.

Plaintiff requests supplementation to identify and produce all nonprivileged written or recorded statements concerning Plaintiff's reports of harassment, threats, requests for protection, housing decisions, the July 15, 2021 assault, witness statements, incident reports, supervisory reports, investigative materials, and other records directly relating to the surviving failure-to-protect claim.

**RESPONSE:** **Defendants stand on their objections and response.**

**Plaintiff's Rule 37 demand materially recasts Request No. 15. The original request sought written or recorded statements concerning nine enumerated subjects, six of which, subparts (c) through (h), involve post-incident shakedowns, retaliation, grievance-copy, legal-mail, and legal-document allegations outside the sole remaining claim. Plaintiff now adds statements concerning "requests for protection" and "housing decisions" and broadens the request to demand supervisory reports, investigative materials, and any other record that can be characterized as relating to the surviving claim. A Rule 37 letter is not a vehicle to rewrite the original request or erase Defendants' preserved objections.**

**Defendants have already produced the nonprivileged written and recorded materials located concerning Plaintiff's pre-assault complaints and the July 15, 2021 incident, including the incident report at WC 001-007, the relevant grievances and related records at WC 008-288, the July 15, 2021 day-shift report at WC 1227, the E Block fight videos at WC 1231, the certified kiosk grievances at WC 1232-1264, and the additional grievance records at WC 1453-1498.**

**After a reasonable search, Defendants are not aware of additional nonprivileged responsive statements beyond the materials already produced. Defendants cannot produce witness statements, investigative reports, supervisory reports, or other records that do not exist or were not located through a reasonable search.**

**Defendants will supplement their response if additional nonprivileged responsive materials concerning Plaintiff's reports of threats, requests for protection, relevant housing decisions, or the July 15, 2021 incident are subsequently located.**

For any responsive documents withheld on the basis of privilege, Plaintiff requests that Defendants provide a privilege log sufficient to comply with Rule 26(b)(5).

**RESPONSE:** **Defendants have not withheld otherwise responsive documents solely on the basis of privilege, hence why no privilege log was ever**

produced to Plaintiff. Accordingly, there are presently no withheld responsive documents to identify on a privilege log. Defendants' assertion of privilege objections to the extent a request could encompass privileged material does not establish that responsive privileged documents exist or were withheld.

Should Defendants later identify and withhold a responsive document on the basis of attorney-client privilege, work-product protection, or another applicable protection, Defendants will provide the information required by Rule 26(b)(5), subject to any applicable limitations or protections.

---

## II. Interrogatories

Plaintiff respectfully requests that Defendants supplement the following interrogatory responses.

**RESPONSE:** Defendants disagree that their interrogatory answers require supplemental responses. Each Defendant answered based on his or her personal knowledge and information reasonably available after a reasonable inquiry. An individual party is not required to provide information that is neither personally known nor reasonably available to that party. Where previously produced institutional records contain information responsive to an interrogatory, Defendants identify those records below.

Furthermore, each Defendant's interrogatory answers were separately served and verified. The fact that certain objections or portions of the answers are similar does not convert them into collective answers. The Defendants may possess the same information, rely on the same institutional records reasonably available to them, or assert the same applicable objections.

Where the Defendants' personal knowledge differs, the answers reflect those differences. In particular, Defendant Etherton provided his recollection concerning his request that Plaintiff submit a separation list, and Defendant Crowson identified the shift report that he prepared concerning the July 15, 2021 incident.

**Interrogatory No. 1**

Plaintiff requested that each Defendant identify every person known to have knowledge concerning Plaintiff's reports of harassment, the July 15, 2021 assault, and related matters.

Although Defendants identified several individuals with knowledge of the July 15, 2021 incident, they uniformly refused to answer the remaining subparts based upon boilerplate relevance objections. Plaintiff respectfully submits that persons possessing knowledge of Plaintiff's repeated complaints of harassment, requests for protection, housing decisions, separation requests, and other events leading to the July 15, 2021 assault are directly relevant to Plaintiff's surviving failure-to-protect claim because they bear upon Defendants' knowledge of the substantial risk of harm before the assault occurred.

Plaintiff further requests that each Defendant separately identify every individual known to possess relevant information concerning Plaintiff's pre-assault complaints and requests for protection.

**RESPONSE:**      **Defendants stand on their objections to the subparts concerning dismissed claims and events occurring after the July 15, 2021 incident.**

> **Each Defendant separately identified the persons known to that Defendant who may possess relevant information concerning the July 15, 2021 incident. As to Plaintiff's pre-incident complaints, Defendants Crowson, Bandy, and Gibbs have no personal knowledge of additional persons beyond those already identified in their respective answers. Plaintiff's characterization that each Defendant "uniformly refused to answer based upon boilerplate relevance objections" is incorrect. Each of the objections concerning the subparts (c)-(h) identifies the specific grounds for the objection, and cites to the objectionable language in each of Plaintiff's requests.**

> **Furthermore, each Defendant identified a total of thirteen (13) individuals. Each identified individual was known to each Defendant and supported by the video and document records already produced. Plaintiff identifies no specific person omitted from any Defendant's answer. A generalized demand that Defendants identify "every individual" is not a cognizable deficiency and does not require Defendants to speculate or identify persons unknown to them.**

> **After reasonable inquiry, Defendants are not aware of additional persons responsive to the surviving claim beyond those already identified. No supplementation is warranted. Defendants will supplement if additional responsive information is later discovered.**

> **Defendants refer Plaintiff to the following previously produced documents that contain information concerning Plaintiff's pre-**

assault complaints, requests for protection, housing issues, and the July 15, 2021 incident:

- **WC 008-288: Plaintiff's grievances and PREA-related records from 2020 and 2021, including grievances and communications concerning Plaintiff's complaints, housing concerns, and allegations of threats or harassment.**
- **WC 285-1193: Plaintiff's chirp communications, which include Plaintiff's communications with jail personnel during the relevant period.**
- **WC 1194-1197: Plaintiff's Williamson County Jail cell-assignment history.**
- **WC 1232-1264: Certified copies of Plaintiff's kiosk grievances.**
- **WC 1453-1498: Additional grievances and related records produced by Defendants.**

**Those records identify the persons who authored, received, responded to, or were referenced in the relevant communications. Defendants are not aware, after reasonable inquiry, of additional persons responsive to the surviving failure-to-protect claim beyond those identified in their answers and the previously produced records.**

**Defendant Etherton additionally recalls that Plaintiff was asked in January 2021 to provide a list of inmates from whom he sought separation, but Plaintiff did not provide that list before the July 15, 2021 incident.**

**Interrogatory No. 2**

Each Defendant states either that he or she has no knowledge of actions taken in response to Plaintiff's complaints or, in Defendant Etherton's case, asserts that Plaintiff never provided a list of inmates before July 15, 2021.

Plaintiff requests supplementation because the interrogatory seeks the actions taken in response to Plaintiff's complaints, not merely each Defendant's personal recollection. To the extent responsive information is available through jail records, reports, electronic records, supervisory files, or other institutional sources reasonably available to Defendants, those sources should be consulted before providing a final answer. Defendants should also identify any records reviewed in preparing their responses.

<u>**RESPONSE:**</u>     **Defendants Crowson, Bandy, and Gibbs have no personal knowledge of "all actions taken by Williamson County Jail staff" in response to Plaintiff's complaints between December 2020 and**

January 2021.

Each separately answered that he or she had no knowledge of any actions taken by all Williamson County Jail staff in response to Plaintiff's complaints, reports, or requests for protection between December 2020 and January 2021. Defendant Etherton provided additional information known to him: in January 2021, Plaintiff was asked to provide a list of persons from whom he sought separation, but Plaintiff did not provide that list before the July 15, 2021 incident

Defendants' objection stands. Interrogatory No. 2 demands that each individual Defendant describe "all actions" taken by any Williamson County Jail employee, without identifying the alleged threat, the person making it, the complaint at issue, or the staff member who allegedly responded. Defendants are not required to speculate about conduct outside their knowledge or reconstruct undocumented actions by nonparties merely because Plaintiff assumes that additional conduct occurred.

Furthermore, Plaintiff's Rule 37 letter states a new demand for an itemized list of every record or institutional source reviewed is not contained in Interrogatory No. 2. Nevertheless, to eliminate any claimed uncertainty, and without conceding that supplementation is required, Defendants direct Plaintiff to the following previously produced records containing the information reasonably available concerning Plaintiff's complaints and any documented responses:

- WC 008-288: Plaintiff's grievances and PREA-related records from 2020 and 2021, including complaints submitted by Plaintiff and responses by jail personnel.
- WC 285-1193: Plaintiff's chirp communications with jail personnel during the relevant period.
- WC 1194-1197: Plaintiff's cell-assignment history, reflecting documented housing assignments and transfers.
- WC 1232-1264: Certified copies of Plaintiff's kiosk grievances and responses.
- WC 1453-1498: Additional grievance records and related responses.

Those records reflect the documented complaints, communications, responses, and housing changes reasonably available to Defendants.

They do not identify an additional action taken in response to a specified threat beyond the information provided in the individual Defendants' answers.

Plaintiff identifies no particular complaint, staff response, or responsive action omitted from the answers. His generalized insistence that additional institutional information must exist does not establish that it does. After reasonable inquiry, Defendants are not aware of additional responsive actions beyond those identified in Defendant Etherton's answer and reflected, if at all, in the previously produced records.

No supplementation is warranted. Defendants will supplement if additional responsive information is later discovered.

**Interrogatory No. 3**

Each Defendant answered only that he or she had no knowledge why Plaintiff was moved from E Block to D Block.

Plaintiff requested whether the transfer occurred because of harassment, threats, intimidation, or safety concerns, together with the identity of the decision-maker, the date, the reason for the transfer, and the persons involved.

Plaintiff requests supplementation identifying any available institutional records reflecting the reason for Plaintiff's transfer, the officials involved in that decision, and the records relied upon in answering the interrogatory.

<u>RESPONSE</u>: Plaintiff's Rule 37 letter's characterization understates Defendants' answers. Each Defendant separately answered that he or she has no knowledge as to why Plaintiff was moved from E Block to D Block in January 2021. Because no Defendant knows that the transfer occurred for any of the reasons listed in the interrogatory, Defendants are not required to speculate as to the conditional subparts concerning the decision-maker, date, reason, or persons involved.

Plaintiff's Rule 37 demand also expands Interrogatory No. 3. The interrogatory asked whether the transfer occurred because of harassment, threats, intimidation, or safety concerns and, if so, requested specified details. It did not require Defendants to identify every institutional source consulted or provide a document-by-document account of their inquiry.

Nevertheless, after a reasonable inquiry, Defendants direct Plaintiff to WC 1194-1197, Plaintiff's Williamson County Jail cell-assignment history. That record documents Plaintiff's housing assignments and the dates of his housing changes, including the January 2021 transfer.

This is consistent with Defendants' response to Request for Admission No. 2: Defendants admitted that Plaintiff was moved from E Block to D Block in January 2021 but lacked sufficient knowledge or information to admit that the transfer occurred because of unspecified safety concerns.

Plaintiff identifies no contrary record and no omitted decision-maker known to any Defendant. After reasonable inquiry, Defendants are not aware of an additional record identifying the reason for the January 2021 transfer or the person who authorized it. Plaintiff's assumption that such information must exist does not require Defendants to guess or manufacture an answer.

No supplementation is warranted. Defendants will supplement if additional responsive information is later discovered.

**Interrogatory No. 4**

Each Defendant states only that he or she was unaware of any formal separation order or similar restriction between Plaintiff and Rex Summers.

Plaintiff requests supplementation identifying the records reviewed in reaching that conclusion and clarifying whether Defendants distinguish between formal written separation orders and informal housing restrictions, separation practices, or verbal directives.

**RESPONSE:** Plaintiff mischaracterizes the answers. Each Defendant separately answered that he or she was not aware of any formal separation order, keep-separate designation, classification alert, housing restriction, or other safety-related restriction between Plaintiff and Rex Summers before July 15, 2021. The answers were not limited to a formal written separation order.

Plaintiff's proposed distinction between formal and informal restrictions does not expose a deficiency. The answers denied awareness of every category listed in the interrogatory, including housing restrictions and "other safety-related restrictions." To eliminate any semantic dispute, Defendants clarify that no responding Defendant is aware of an informal housing restriction,

separation practice, or verbal directive requiring Plaintiff and Summers to be kept apart before July 15, 2021.

As with previous Rule 37 demands, Plaintiff attempts to improperly broaden the scope of the original discovery request. Interrogatory No. 4 asked whether such a restriction existed and, if so, requested its date, authorizing official, and method of documentation. It did not ask Defendants to provide an itemized inventory of every record consulted in preparing their answers. General Objection No. 8 also expressly states that each Defendant answered based on information presently known after reasonable inquiry. Plaintiff cannot use a Rule 37 letter to add a new document-audit subpart to the interrogatory.

Nevertheless, without conceding that supplementation is required, after a reasonable inquiry, Defendants refer Plaintiff to the following previously produced records:

- WC 008-288: Grievance and PREA-related records that contain Plaintiff's complaints and jail responses.
- WC 1194-1197: Plaintiff's cell-assignment history.
- WC 1232-1264: Plaintiff's certified kiosk grievances.
- WC 1453-1498: Additional grievance records.

Consistent with Defendants' response to Request for Production No. 2, a reasonable search for nonprivileged records concerning any separation order, keep-separate directive, housing alert, or similar restriction involving Plaintiff and Rex Summers before July 15, 2021 located no additional responsive records. Plaintiff identifies no specific order, alert, restriction, practice, or directive omitted from the answers. No supplementation is warranted. Defendants will supplement if additional responsive information is later discovered

**Interrogatory No. 5**

Each Defendant states that he or she has no personal knowledge of communications between jail personnel and Plaintiff's criminal defense attorney, Steven Williams.

Plaintiff requests supplementation identifying whether Defendants made inquiry of available jail records, logs, memoranda, telephone records, correspondence, or supervisory personnel before disclaiming knowledge.

<u>RESPONSE</u>:      Plaintiff mischaracterizes both the interrogatory and Defendants answers. Interrogatory No. 5 asks each Defendant to describe communications between all jail staff and Plaintiff's

criminal-defense attorney, Steven Williams. Each Defendant specifically objected because the interrogatory seeks communications involving every jail employee, not merely the four remaining Defendants, and information outside the responding Defendant's personal knowledge. Subject to those objections, Defendants Crowson, Bandy, and Gibbs each stated that he or she had no personal knowledge of any responsive conversations, and Defendant Etherton stated that he had no personal knowledge of any responsive calls.

Those are individualized answers based on the knowledge reasonably available to each responding Defendant; they are not an institutional representation that no Williamson County Jail employee ever communicated with Williams. Each answer also incorporates General Objection No. 8, which states that the answers are based on information presently known after reasonable inquiry.

Plaintiff's demand for an itemized account of every jail record, telephone log, memorandum, custodian, or supervisory employee consulted was not included in Interrogatory No. 5. Plaintiff may not add a new source-by-source audit requirement through a Rule 37 letter.

Nevertheless, without conceding that supplementation is required, Defendants direct Plaintiff to WC 285-1193, Plaintiff's chirp communications, and WC 008-288, WC 1232-1264, and WC 1453-1498, Plaintiff's grievance and kiosk records. Those productions contain Plaintiff's documented communications and complaints during the relevant period. Defendants are not aware of any jail log, memorandum, correspondence, or other previously produced record documenting a communication between Williamson County Jail personnel and Steven Williams concerning Plaintiff's safety, harassment, threats, housing, or separation from other inmates.

Plaintiff identifies no date, speaker, recipient, method of communication, or specific conversation allegedly omitted from the answers.

Defendant Etherton's separate statement that he asked Plaintiff in January 2021 to submit a list of persons whom Plaintiff considered a threat does not identify or suggest any communication between Williams and jail personnel. It therefore does not alter the response to Interrogatory No. 5.

No supplementation is warranted. Defendants will supplement if

additional responsive information is later discovered.

**Interrogatory No. 6**

Plaintiff requested information concerning Officer Baxter's receipt of Plaintiff's list of threatening inmates.

Defendants uniformly responded that they possess no personal knowledge.

Plaintiff requests supplementation identifying whether any reports, shift logs, housing records, memoranda, or other institutional records were reviewed concerning Officer Baxter's interactions with Plaintiff before answering the interrogatory.

**RESPONSE:** Plaintiff's characterization omits both the objections and the substance of the answers. Each Defendant separately objected that Interrogatory No. 6 seeks information from Officer Baxter, who is not a Defendant to the surviving claim, and assumes facts not in evidence. Subject to and without waiving those objections, each Defendant answered that he or she has no personal knowledge that Officer Baxter obtained names from Plaintiff in January 2021.

Interrogatory No. 6 makes subparts (a) through (c) expressly conditional: "if so." Because no responding Defendant knows that Officer Baxter obtained such names, Defendants cannot identify a list, state where it was documented, or describe actions supposedly taken in response without speculating. Plaintiff's allegation that the exchange occurred is not evidence that it did.

Plaintiff's Rule 37 demand also adds a requirement not contained in the interrogatory: an inventory of every report, shift log, housing record, memorandum, or other institutional source reviewed. General Objection No. 8 expressly states that each answer is based on information presently known after reasonable inquiry. Plaintiff may not use a Rule 37 letter to add a source-by-source audit requirement.

Nevertheless, to eliminate any claimed uncertainty, Defendants direct Plaintiff to WC 008-288, Plaintiff's grievance and PREA-related records; WC 285-1193, Plaintiff's chirp communications; WC 1194-1197, Plaintiff's cell-assignment history; WC 1232-1264, Plaintiff's certified kiosk grievances; and WC 1453-1498, the additional grievance records. Those materials contain the information reasonably available concerning Plaintiff's pre-assault complaints, communications, and housing history. They do not identify a list provided to Officer Baxter or an action taken in response to such a list.

Consistent with Defendants' response to Request for Production No. 5, a reasonable search and inquiry located no notes, logs, memoranda, lists, notebooks, or other records created by Officer Baxter reflecting that Plaintiff identified inmates who allegedly threatened him. Defendant Etherton's separate answers identify Etherton, not Officer Baxter, as the person who asked Plaintiff to provide a separation list, and Plaintiff did not provide the requested list before July 15, 2021.

Plaintiff identifies no specific record, name, or responsive action omitted from the answers. No supplementation is warranted. Defendants will supplement if additional responsive information is later discovered.

**Interrogatory No. 8**

Three Defendants state they possess no personal knowledge concerning the investigation of the July 15, 2021 assault, while Defendant Crowson identifies only his shift report.

Plaintiff requests supplementation identifying:

- who investigated the assault;
- whether witness statements were collected;
- whether video recordings were reviewed;
- whether investigative reports exist;
- and whether Defendants reviewed those materials before responding.

**RESPONSE:** Plaintiff's characterization is incomplete. Defendants Bandy, Gibbs, and Etherton each separately answered that he or she has no personal knowledge of any investigation concerning the July 15, 2021 incident. Defendant Crowson stated that he completed a July 15, 2021 shift report, but likewise has no personal knowledge of any investigation concerning the incident. The answers therefore identify precisely what each Defendant knows; they do not establish that Crowson conducted an investigation or that a separate investigation occurred.

Plaintiff's Rule 37 demand improperly conflates the existence of incident-related materials with the individual Defendants' knowledge of an investigation. It also adds a new requirement that Defendants identify every material reviewed in preparing their answers. Interrogatory No. 8 did not request a source-by-source account, and each Defendant's General Objection No. 8 expressly states that the answers were based on information presently known after reasonable inquiry. Nevertheless, without conceding that supplementation is

required, Defendants direct Plaintiff to:

- WC 001-007: The July 15, 2021 incident report and related incident materials.
- WC 1227: Defendant Crowson's July 15, 2021 day-shift report.
- WC 1231: The E Block fight video recordings concerning the July 15, 2021 incident.

Those materials establish that the incident was documented and that video recordings existed. They do not establish that any responding Defendant reviewed the videos as part of an investigation, collected witness statements, conducted a separate investigation, or reached investigative conclusions.

After a reasonable inquiry, Defendants are not aware of separately maintained witness statements or a separate investigative report beyond the incident-related materials already produced. Nor is any responding Defendant aware of a separate investigator whose identity was omitted from the answers. Defendants are not required to speculate about an investigation or conclusions outside their knowledge merely because Plaintiff assumes additional investigative activity occurred.

No supplementation is warranted. Defendants will supplement if additional responsive information is later discovered.

**Interrogatory No. 11**

Defendants object to identifying inmates housed in E Block except for July 15, 2021.

Plaintiff respectfully requests supplementation at least as to the January 2021 transfer and July 15, 2021, because those housing assignments directly relate to Plaintiff's allegations concerning prior notice, potential witnesses, housing decisions, and the assault itself.

<u>**RESPONSE:**</u>   Defendants stand on their objections to identifying every inmate housed in E Block on dates unrelated to the surviving July 15, 2021 failure-to-protect claim. The request seeks confidential and security-sensitive information concerning numerous third-party inmates who were not involved in the incident.

After a reasonable inquiry, Defendants refer Plaintiff to:

- WC 001-007: The July 15, 2021 incident report, which identifies persons involved in or associated with the incident.

- WC 1194-1197: Plaintiff's cell-assignment history.
- WC 1227: The July 15, 2021 day-shift report.
- WC 1231: The E Block fight videos from the July 15, 2021 incident.
- WC 008-288, WC 1232-1264, and WC 1453-1498: Grievance and kiosk records that identify persons referenced by Plaintiff in connection with his complaints and the incident.

**Defendants will not provide a complete roster of unrelated third-party inmates for the additional dates identified in the interrogatory.**

**Interrogatory No. 12**

Rather than identifying personnel working on the requested dates, Defendants merely described the general job duties of the four named Defendants.

That response does not answer the interrogatory.

Plaintiff requests supplementation identifying the correctional officers, supervisors, administrative personnel, trustees, medical staff, and other personnel assigned to work on the relevant dates, together with their duties and assignments.

<u>RESPONSE:</u>    Plaintiff's assertion that Defendants did not answer Interrogatory No. 12 ignores both the objections and the extraordinary scope of the interrogatory. The interrogatory does not ask only for personnel involved in the July 15, 2021 incident. It demands the identity and duties of every correctional officer, supervisor, administrative employee, trustee, medical employee, and "other personnel" working on eight separate dates spanning January 2021 through February 2022. Six of those dates postdate the July 15, 2021 incident and concern dismissed or otherwise unrelated allegations. The January 2021 subpart does not identify a specific date. Even assuming Plaintiff's January transfer has some relevance, a jail-wide roster of every person working that day, regardless of any connection to the transfer or the surviving claim, is not relevant or proportional.

Subject to and without waiving those objections, each Defendant identified the four remaining Defendants and described their respective correctional duties. That was a substantive response tailored to the parties and the sole remaining claim; it was not a concession that Plaintiff is entitled to complete staffing rosters, duty assignments, and personnel information for every listed date.

Plaintiff's Rule 37 demand does not narrow the interrogatory. It simply repeats the same sweeping request for all correctional, supervisory, administrative, trustee, medical, and other personnel. Plaintiff identifies no particular omitted person who participated in the January transfer, received a pre-assault complaint, made a relevant housing decision, witnessed the July 15 incident, or otherwise possesses information material to the surviving claim.

Nevertheless, to identify the information reasonably available concerning the only specified date directly tied to the remaining claim, and without conceding that supplementation is required, Defendants direct Plaintiff to:

- WC 001-007: The July 15, 2021 incident report and related materials, which identify persons documented as involved in or responding to the incident.
- WC 1227: Defendant Crowson's July 15, 2021 day-shift report, which records information concerning the incident and staff response.
- WC 1231: The E Block fight video recordings depicting the July 15, 2021 incident.
- WC 1198-1225: The Williamson County Jail Regulations, Inmate Disciplinary Code, and Inmate Handbook, which describe general jail responsibilities, rules, and procedures but do not constitute staffing rosters or assignment records.

Those materials identify the personnel and conduct documented in connection with the July 15, 2021 incident. They do not establish a complete roster or the precise assignment of every correctional employee, administrator, trustee, medical worker, or other person who may have been present at the facility.

After reasonable inquiry, Defendants are not aware of additional information reasonably available to the responding Defendants that identifies every person and that person's particular assignment for each of the eight dates listed by Plaintiff. Defendants stand on their objections. No supplementation is warranted. Defendants will supplement if additional responsive information material to the surviving claim is later discovered.

Interrogatory No. 15

Defendants object to the majority of the interrogatory and provide virtually no substantive identification of responsive statements.

Plaintiff requests supplementation identifying all nonprivileged written, recorded, electronic, audio, video, or digital statements concerning Plaintiff's reports of harassment, requests for protection, the July 15, 2021 assault, witness statements, investigative reports, and other statements directly relating to the surviving failure-to-protect claim.

Plaintiff further requests that each Defendant provide separate responses identifying information known to that Defendant individually rather than relying upon substantially identical collective responses prepared on behalf of all Defendants.

<u>RESPONSE</u>:      **Plaintiff's characterization is inaccurate. Each Defendant separately served and verified an answer to Interrogatory No. 15. The fact that the answers assert substantially similar objections does not make them collective; the same interrogatory presents the same defects as to each responding Defendant.**

**Interrogatory No. 15 is also not limited to the surviving claim. It demands every written, recorded, audio, video, electronic, or digital statement by any Defendant or witness concerning nine categories, including six post-incident matters arising from dismissed, severed, or unpled claims, and further demands the date, author, type, and present custodian of each statement. Defendants stand on their objections to subparts (c) through (h), privilege, proportionality, and the interrogatory's attempt to obtain document production through an interrogatory.**

**Without conceding that the original answers were deficient, and to eliminate any claimed uncertainty as to subparts (a) and (b), Defendants supplement by identifying the following previously produced materials containing the nonprivileged written, electronic, recorded, and video statements located concerning Plaintiff's pre-assault complaints and the July 15, 2021 incident:**

- **WC 001-007: The July 15, 2021 incident report and related incident materials.**
- **WC 008-288: Plaintiff's grievances and PREA-related records from 2020 and 2021, including Plaintiff's statements and jail responses.**
- **WC 285-1193: Plaintiff's chirp communications with jail personnel.**
- **WC 1227: Defendant Crowson's July 15, 2021 day-shift report.**
- **WC 1231: The E Block fight video recordings concerning the July 15, 2021 incident.**
- **WC 1232-1264: Certified copies of Plaintiff's kiosk grievances and responses.**

- WC 1453-1498: Additional grievance records and related statements.

The produced records identify the date, author or sender, and type of statement where that information is available. After a reasonable inquiry, Defendants are not aware of separately maintained witness statements or a separate investigative report beyond the incident-related materials already produced. Nor has any Defendant identified an additional nonprivileged statement known only to that Defendant beyond these records.

Plaintiff identifies no specific omitted statement, author, or custodian. Requiring each Defendant to repeat the same Bates ranges does not create individualized information where none exists. This supplementation resolves any legitimate issue; no further supplementation is warranted. Defendants will supplement if additional nonprivileged responsive statements are later discovered.

## III. Requests for Admission

Plaintiff respectfully requests that Defendants supplement the following Requests for Admission.

**RESPONSE:** Defendants disagree that their responses to Plaintiff's Requests for Admission were incomplete or evasive. The responses fairly admitted, denied, or qualified the matters stated to the extent permitted by the wording of each request and the information known or reasonably available to Defendants after a reasonable inquiry.

The objections were not boilerplate. Each objection explained the ambiguity or other defect in the particular request. Plaintiff's disagreement with those objections does not render them improper.

### Request for Admission No. 1

Plaintiff requested that each Defendant admit that Plaintiff complained to jail staff about harassment or threats before July 15, 2021.

Defendants responded collectively, objected that the request was vague, and admitted only that Plaintiff made "generalized complaints."

Plaintiff requests supplementation because the response does not fairly answer the request. The Request did not ask Defendants to characterize Plaintiff's complaints as "generalized" or otherwise. Rather, it simply requested an admission that Plaintiff complained to jail staff

about harassment or threats before July 15, 2021.

Additionally, the response was made collectively on behalf of all four Defendants. Plaintiff requests that each Defendant separately admit or deny the request based upon that Defendant's own knowledge after a reasonable inquiry.

<u>RESPONSE</u>:      Plaintiff requested that Defendants admit that Plaintiff **complained to jail staff about harassment or threats before July 15, 2021.**

**Defendants admitted that Plaintiff made generalized complaints before July 15, 2021. That response fairly answers the request while avoiding an admission regarding the nature, specificity, recipients, or substance of complaints that the request does not identify.**

**Nevertheless, to clarify the response, each Defendant separately responds as follows:**

- **<u>Defendant Christopher Crowson</u>: After a reasonable inquiry, Defendant Crowson admits that Plaintiff made complaints to Williamson County Jail staff before July 15, 2021, which Plaintiff characterized as involving harassment or threats. Defendant Crowson does not admit that Plaintiff specifically identified Rex Summers as a threat or communicated facts establishing that Summers posed a substantial risk to Plaintiff before July 15, 2021.**
- **<u>Defendant Amy Bandy</u>: After a reasonable inquiry, Defendant Bandy admits that Plaintiff made complaints to Williamson County Jail staff before July 15, 2021, which Plaintiff characterized as involving harassment or threats. Defendant Bandy does not admit that Plaintiff specifically identified Rex Summers as a threat or communicated facts establishing that Summers posed a substantial risk to Plaintiff before July 15, 2021.**
- **<u>Defendant Lori Gibbs</u>: After a reasonable inquiry, Defendant Gibbs admits that Plaintiff made complaints to Williamson County Jail staff before July 15, 2021, which Plaintiff characterized as involving harassment or threats. Defendant Gibbs does not admit that Plaintiff specifically identified Rex Summers as a threat or communicated facts establishing that Summers posed a substantial risk to Plaintiff before July 15, 2021.**
- **<u>Defendant Robert Etherton</u>: After a reasonable inquiry, Defendant Etherton admits that Plaintiff made complaints to**

Williamson County Jail staff before July 15, 2021, which Plaintiff characterized as involving harassment or threats. Defendant Etherton further recalls that Plaintiff was asked in January 2021 to provide a list of persons from whom he sought separation, but Plaintiff did not provide that list before July 15, 2021. Defendant Etherton does not admit that Plaintiff specifically identified Rex Summers as a threat before the incident.

## Request for Admission No. 2

Plaintiff requested that Defendants admit Plaintiff was moved from E Block to D Block in January 2021 because of safety concerns.

Defendants admitted the transfer occurred but stated they lacked sufficient knowledge to admit or deny the reason for the transfer.

Plaintiff requests supplementation because Defendants did not identify whether they conducted a reasonable inquiry into available jail records before asserting an inability to admit or deny. If institutional records exist identifying the reason for Plaintiff's transfer, those records should be reviewed before responding.

RESPONSE:      Plaintiff requested that Defendants admit Plaintiff was moved from E Block to D Block in January 2021 because of safety concerns.

Defendants admitted that Plaintiff was moved from E Block to D Block in January 2021. Defendants lacked sufficient information to admit or deny that the move occurred because of "safety concerns," an undefined phrase that could encompass numerous institutional, classification, security, medical, operational, or personal considerations.

After a reasonable inquiry, including consideration of Plaintiff's previously produced cell-assignment history, WC 1194-1197, Defendants are unable to determine the reason for the transfer. The cell-assignment history documents Plaintiff's housing assignments but does not identify why the transfer occurred or who authorized it.

Accordingly, each Defendant separately responds:

- Defendant Christopher Crowson: Admits that Plaintiff was moved from E Block to D Block in January 2021. After a

reasonable inquiry, Defendant Crowson lacks sufficient information to admit or deny that the transfer occurred because of safety concerns.

- <u>Defendant Amy Bandy</u>: Admits that Plaintiff was moved from E Block to D Block in January 2021. After a reasonable inquiry, Defendant Bandy lacks sufficient information to admit or deny that the transfer occurred because of safety concerns.
- <u>Defendant Lori Gibbs</u>: Admits that Plaintiff was moved from E Block to D Block in January 2021. After a reasonable inquiry, Defendant Gibbs lacks sufficient information to admit or deny that the transfer occurred because of safety concerns.
- <u>Defendant Robert Etherton</u>: Admits that Plaintiff was moved from E Block to D Block in January 2021. After a reasonable inquiry, Defendant Etherton lacks sufficient information to admit or deny that the transfer occurred because of safety concerns.

**Request for Admission No. 3**

Plaintiff requested that Defendants admit Rex Summers was housed in the same Protective Custody unit as Plaintiff before the July 15, 2021 assault.

Rather than admitting or denying the request, Defendants admitted only that Rex Summers was assigned to E Pod on July 15, 2021.

That response does not fairly respond to the substance of the request. Plaintiff requests that Defendants admit or deny whether Plaintiff and Rex Summers were housed together in E Pod before the assault or otherwise explain the factual basis for any denial.

<u>RESPONSE</u>:     Plaintiff requested that Defendants admit Rex Summers was housed in the same Protective Custody unit as Plaintiff before the July 15, 2021 incident.

The phrase "same Protective Custody unit" is ambiguous because it does not state whether Plaintiff means the same cell, tier, pod, block, classification, or general housing area. Defendants therefore appropriately qualified their admission.

To clarify, each Defendant separately responds:

- <u>Defendant Christopher Crowson</u>: Admits that Plaintiff and Rex Summers were assigned to E Block immediately before and on July 15, 2021. Defendant Crowson denies that Plaintiff and Summers were housed in the same cell. Defendant Crowson

lacks sufficient information to admit that both inmates held the same formal Protective Custody classification.

- **<u>Defendant Amy Bandy</u>**: Admits that Plaintiff and Rex Summers were assigned to E Block immediately before and on July 15, 2021. Defendant Bandy denies that Plaintiff and Summers were housed in the same cell. Defendant Bandy lacks sufficient information to admit that both inmates held the same formal Protective Custody classification.
- **<u>Defendant Lori Gibbs</u>**: Admits that Plaintiff and Rex Summers were assigned to E Block immediately before and on July 15, 2021. Defendant Gibbs denies that Plaintiff and Summers were housed in the same cell. Defendant Gibbs lacks sufficient information to admit that both inmates held the same formal Protective Custody classification.
- **<u>Defendant Robert Etherton</u>**: Admits that Plaintiff and Rex Summers were assigned to E Block immediately before and on July 15, 2021. Defendant Etherton denies that Plaintiff and Summers were housed in the same cell. Defendant Etherton lacks sufficient information to admit that both inmates held the same formal Protective Custody classification.

**Request for Admission No. 8**

Plaintiff requested that Defendants admit Administrative Segregation and Protective Custody inmates were housed together in E Block during 2021.

Defendants objected to the phrase "housed together" but admitted that inmates with different classifications could be housed in E Block depending upon institutional needs.

Because Defendants have effectively acknowledged that inmates of different classifications could be housed within E Block, Plaintiff requests that Defendants supplement their response by clearly admitting or denying whether Administrative Segregation inmates and Protective Custody inmates were, in fact, housed within E Block during the relevant period.

**<u>RESPONSE</u>:** **Plaintiff requested that Defendants admit Administrative Segregation and Protective Custody inmates were housed together in E Block during 2021.**

**Defendants' response admitted that inmates with different classifications could be assigned to E Block during 2021. The qualification was necessary because the phrase "housed together" could mean placement within the same cell, the same tier, or the same general housing block, and because the request was not limited to a specific date.**

To clarify, each Defendant separately responds:

- **<u>Defendant Christopher Crowson</u>**: Admits that inmates with different classifications, including inmates designated for Administrative Segregation and Protective Custody, could be assigned to separate cells within E Block during 2021. Defendant Crowson denies that this admission means such inmates were necessarily housed in the same cell.
- **<u>Defendant Amy Bandy</u>**: Admits that inmates with different classifications, including inmates designated for Administrative Segregation and Protective Custody, could be assigned to separate cells within E Block during 2021. Defendant Bandy denies that this admission means such inmates were necessarily housed in the same cell.
- **<u>Defendant Lori Gibbs</u>**: Admits that inmates with different classifications, including inmates designated for Administrative Segregation and Protective Custody, could be assigned to separate cells within E Block during 2021. Defendant Gibbs denies that this admission means such inmates were necessarily housed in the same cell.
- **<u>Defendant Robert Etherton</u>**: Admits that inmates with different classifications, including inmates designated for Administrative Segregation and Protective Custody, could be assigned to separate cells within E Block during 2021. Defendant Etherton denies that this admission means such inmates were necessarily housed in the same cell.

**Collective Responses**

Finally, Plaintiff respectfully requests that Defendants supplement all Requests for Admission that were answered collectively on behalf of all Defendants.

Plaintiff served separate Requests for Admission directed to each Defendant individually. Accordingly, each Defendant should separately admit, deny, or qualify each request based upon that Defendant's own knowledge and the reasonable inquiry required by Rule 36, rather than relying upon a single response that obscures each Defendant's individual position.

**<u>RESPONSE</u>:** Defendants disagree that the use of a combined response rendered their admissions insufficient. Rule 36 requires each responding party to admit, deny, or state in detail why the party cannot truthfully admit or deny the matter after a reasonable inquiry. It does not prohibit parties represented by the same counsel from serving a consolidated document where each Defendant's response is

expressly identified.

The original responses specifically identified Crowson, Bandy, Gibbs, and Etherton as the responding parties. Where all four Defendants had the same position after a reasonable inquiry, the response was stated once rather than repeated four times. That format did not obscure a differing admission, denial, or factual basis because there was no material difference among the four Defendants' positions as to those requests.

Where a Defendant possessed distinct personal knowledge, that knowledge has been separately identified. Defendant Etherton's recollection that Plaintiff was asked to provide a list of persons from whom he sought separation is one such distinction.

Defendants therefore do not agree that every Request for Admission must be substantively rewritten merely because the responses were presented in a consolidated document. For the requests specifically challenged in Plaintiff's letter, Defendants have nevertheless clarified each Defendant's individual response above.



**Subject:** RE: Jorge Leal

**Sgt. Havens,**

I spoke to Mr. Leal today by video and he is continuing to have problems with being harassed and threatened by six inmates with whom he is housed. This is a continuation of the issue we spoke about when the inmates were on lockdown in late December. Jorge tells me that he has not been separated from these inmates. I can provide you with the names and cell numbers of the inmates if you need them. I am only interested in having Jorge separated from these individuals. I am happy to speak about it further with you. You can call me at my office at the number below, or call my cellphone at 314-308-7018. Thanks.

**Stephen C. Williams**
Attorney
Kuehn, Beasley & Young, P.C.
23 South 1st Street
Belleville, IL 62220
Phone: 618-277-7260
Fax: 618-277-7718

---

**From:** chavens@wcsheriff.com
**Sent:** Thursday, January 21, 2021 3:51 PM
**To:** Stephen Williams
**Subject:** RE: Jorge Leal

Confirmed here as well. Video call is scheduled for date and time listed.

Thanks

**Sgt. Chad Havens**
Williamson County Jail
404 North Van Buren St.
Marion, IL 62959
(618) 998-2100 Ext. 1311

---

**Original Message**

**Subject:** Jorge Leal

**From:** Stephen Williams Swilliams@kuehnlawfirm.com

**Date:** Thursday, January 21, 2021, 2:26 PM

**To:** Chavens@wcsheriff.com

Sgt. Havens-

This confirms that we have scheduled a video call with Jorge Leal and myself, Stephen Williams, his attorney, for 2:30 p.m. on Monday, January 25, 2021. I will make sure I have installed the correct app on my laptop in order to connect. Thank you.

Steve Williams

Get Outlook for iOS



OFFICIAL RECORD

FD-302 (Rev. 5-8-10)

## FEDERAL BUREAU OF INVESTIGATION

Date of entry     01/20/2021

On January 14, 2021, SA Wainscott met with Williamson County Jail Lt. Pinkerton. Lt. Pinkerton received a call from Leal's sister saying that Leal was beat by another inmate in the Williamson County Jail. Lt. Pinkerton then reviewed Leal's phone calls and chirp communications to verify the validity of the complaint. During the review of Leal's chirp communications Lt. Pinkerton discovered that Leal was chatting with a unknown subject. Leal asked the unknown subject to see if his grindr account was active as it was the account he used when he was arrested. Leal provided the grindr account username utmskyhawkboy@yahoo.com or utmskyhawkboy1@yahoo.com with password Giovani2010. Lt. Pinkerton provided a papercopy of the downloaded chirp communications along with three DVD's containing Leal's jail calls. Lt. Pinkerton called the company that manages chirp communications who said Leal was communicating with phone number (631) 446-9204. This number showed is was owned by Peerless communications with so subscriber information.

An administrative subpoena was sent to Peerless to obtain subscriber information for (631) 446-9204. Peerless notified SA Wainscott that the number in question isnt owned by Peerless. Database checks were done on the number but no subscriber information was located. The chirp communications and three DVD's containing Leal's jailcalls will be entered into the 1A file of this case.

SA Wainscott attempted to log into the grindr account provided by Leal to the unknown subjects. According to gindr the account was not active.

---

Investigation on 01/14/2021 at Marion, Illinois, United States (In Person)

File # 305B-SI-3142309                                          Date drafted 01/20/2021

by WAINSCOTT BRIAN

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

| | Chirps 1/1/2019 5:00 AM - 12/5/2023 4:59 AM Etc/UTC | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Search Params: Items=1000 Offset=2000 OrderBy=createdDate.date Inmates=(0285190530) SiteIds=(S001007171) | | | | | | | | |
| Sent Date | Facility | Customer ANI | Inmate | Inmate ANI | Direction | Type | Status | Message |
| 7/15/2021 11:25:33 AM | Williamson County Illinois | 17315920242 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | US v. Poehlman, 217 F. 3d 692, 2000 WL 821290 (9th Cir. 1999), US v. Snyman (D.S.D. 2018) CR. 16-50102- JLV |
| 7/15/2021 11:36:51 AM | Williamson County Illinois | 17315920242 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | US v. Senke (M.D.Pa. 2017) 3:16 cr 373 (Sept. 19, 2017), US v. Nitschke, 843 F. Supp. 2d 4 (D.D.C. 2011) 11-138 (JEB), US v. Montgomery (N.D. Okla. 2012)... |
| 7/15/2021 11:38:18 AM | Williamson County Illinois | 17315920242 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | 7-CR-122-GKF (Feb. 27, 2012). Thanks!!! |
| 7/15/2021 3:42:44 PM | Williamson County Illinois | 16183647823 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Hi its tj tell her my charges on her got dismiss im takin 5yrs@50% i do 4-8mos I luv her Cya soon dad bring her with to visit plz ty luv u both show her dis plz |
| 7/15/2021 3:44:04 PM | Williamson County Illinois | 16183647823 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Haven't seen her in a few days I will let her know |
| 7/15/2021 6:50:56 PM | Williamson County Illinois | 17315920242 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Hey just wanted to make sure you received my txts. Thanks |
| 7/15/2021 6:53:23 PM | Williamson County Illinois | 17315920242 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | I will get them sent out as soon as we can |
| 7/15/2021 7:15:04 PM | Williamson County Illinois | 16187030081 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | When? And they have turned this into an unsafe block again. We need to discuss things about whats going on and go over the case n contact my mom |
| 7/15/2021 8:39:03 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Mr. Williams, this Jorge Leal. Im sorry for sending texts to you this late from jail. Just wanted to inform you that I got beat up pretty bad about 30 mins ago |

| Sent Date | Facility | Customer ANI | Inmate | Inmate ANI | Direction | Type | Status | Message |
|---|---|---|---|---|---|---|---|---|
| 7/15/2021 8:42:51 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | By one of the guys that caused me trouble back in January and 2 or 3 more of his friends. I hope to talk to you tomorrow |
| 7/15/2021 10:11:30 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | 1) Have they separated you? 2) Have taken care of your medical needs?I'll call the jail first thing tomorrow. |
| 7/15/2021 10:14:21 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | we are now in lock down. I believe they are trying to figure what happened and in order to move people around. Sargeant asked me if I needed medical attention |
| 7/15/2021 10:15:45 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | And I told him yes and he said he would have to take me to the er. He then called the nurse to her what to do and told me the nurse would see me tomorrow |
| 7/15/2021 10:17:29 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | I have a cut lip and a couple of lose teeth along with some headaches. They only gave me a small bag with ice. Needless to say Im pretty upset |
| 7/15/2021 11:26:42 PM | Williamson County Illinois | 16183647823 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | It's your wife I love you TJ I miss you |
| 7/15/2021 11:40:30 PM | Williamson County Illinois | 19032676655 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Bro, I felt like I had to tell one of you. Obviously I was not going to let anybody in TN know bc they already have enough shit to worry about. I got beat up... |
| 7/15/2021 11:42:14 PM | Williamson County Illinois | 19032676655 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Earlier today but Im ok. Mr williams already know and he will call the jail tomorrow to get involved. Please do not tell anyone in TN right now. I'll call you |

**WC 557**

| Sent Date | Facility | Customer ANI | Inmate | Inmate ANI | Direction | Type | Status | Message |
|---|---|---|---|---|---|---|---|---|
| 7/16/2021 5:26:25 AM | Williamson County Illinois | 14173657335 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Por el es unico y no teme aguaites q mi Dios es fiel y el tiene el control de todas las cosas |
| 7/16/2021 10:15:49 AM | Williamson County Illinois | 14173657335 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Por favor en cuanto puedas yamame estoy muy preocupada |
| 7/16/2021 10:16:27 AM | Williamson County Illinois | 14173657335 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Ok |
| 7/16/2021 11:56:03 AM | Williamson County Illinois | 17315923047 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Martita, nos tienen encerrados otra vez por el virus. No sabemos cuando nos van a dejar salir por si no les llamo en estos dias. Tampoco es buena idea hacer... |
| 7/16/2021 11:56:44 AM | Williamson County Illinois | 17315923047 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Visitas |
| 7/16/2021 11:58:19 AM | Williamson County Illinois | 17315923047 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Ok, yo le aviso a mi Madre, cuidate mucho Dios te bendiga |
| 7/16/2021 1:39:53 PM | Williamson County Illinois | 19032676655 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Ok |
| 7/16/2021 2:37:51 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Mr. Williams did you have a chance to call the jail? |
| 7/16/2021 2:39:35 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | I have and am waiting for a response. How are you texting me? I'm concerned about this mode of communication. |
| 7/16/2021 2:39:53 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Whose phone is it? |
| 7/16/2021 2:42:51 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | It's a chirp device that I rented thru the jail. But I'll until you have something and you call the jail to ask for me. Im still locked down |

**WC 559**

# EXHIBIT K

| Sent Date | Facility | Customer ANI | Inmate | Inmate ANI | Direction | Type | Status | Message |
|---|---|---|---|---|---|---|---|---|
| 7/15/2021 8:42:51 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | By one of the guys that caused me trouble back in January and 2 or 3 more of his friends. I hope to talk to you tomorrow |
| 7/15/2021 10:11:30 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | 1) Have they separated you? 2) Have taken care of your medical needs?I'll call the jail first thing tomorrow. |
| 7/15/2021 10:14:21 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | we are now in lock down. I believe they are trying to figure what happened and in order to move people around. Sargeant asked me if I needed medical attention |
| 7/15/2021 10:15:45 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | And I told him yes and he said he would have to take me to the er. He then called the nurse to her what to do and told me the nurse would see me tomorrow |
| 7/15/2021 10:17:29 PM | Williamson County Illinois | 13143087018 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | I have a cut lip and a couple of lose teeth along with some headaches. They only gave me a small bag with ice. Needless to say Im pretty upset |
| 7/15/2021 11:26:42 PM | Williamson County Illinois | 16183647823 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | It's your wife I love you TJ I miss you |
| 7/15/2021 11:40:30 PM | Williamson County Illinois | 19032676655 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Bro, I felt like I had to tell one of you. Obviously I was not going to let anybody in TN know bc they already have enough shit to worry about. I got beat up... |
| 7/15/2021 11:42:14 PM | Williamson County Illinois | 19032676655 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Earlier today but Im ok. Mr williams already know and he will call the jail tomorrow to get involved. Please do not tell anyone in TN right now. I'll call you |

WC 557

EXHIBIT L

| Sent Date | Facility | Customer ANI | Inmate | Inmate ANI | Direction | Type | Status | Message |
|---|---|---|---|---|---|---|---|---|
| | | | **Chirps** | | | | | |
| | | 1/1/2019 5:00 AM - 12/5/2023 4:59 AM Etc/UTC | | | | | | |
| | | Search Params: Items=1000 Offset=3000 OrderBy=createdDate.date Inmates=(0285190530) SiteIds=(S001007171) | | | | | | |
| 8/12/2021 11:30:08 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Cuanta confianza les tienes a los senadores, representantes, y la Ltn governor como para decirles lo que esta pasando en la carcel conmigo y pedirles ayuda? |
| 8/12/2021 11:31:56 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | No se que puedan hacer pero tal vez comensar una investigacion o algo? Hace como una hora llegaron mucho guardias del department of corrections y se me tieron.. |
| 8/12/2021 11:34:03 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | A todas las celdas a sacar toda la basura y lo extra. Se llevaron un log que yo estava haciendo sobre lo que me paso aqui. Tenia copias de cartas donde me... |
| 8/12/2021 11:34:53 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | La ltn governor solo la conosi de pasada y alos otros pues de pasada tambien an venido a comer pero ya tiene un buen que no |
| 8/12/2021 11:35:15 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | Todos esos son corruptos tambien |
| 8/12/2021 11:35:56 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Queje sobre lo que me estava pasando. Tenia testimonios de varios encarcelados diciendo lo que vieron. Todo para una posible demanda. Me dejaron sin libretas |
| 8/12/2021 11:36:10 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | Y lapizeros. |
| 8/12/2021 11:36:36 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | What?!?! Thats insane!! |
| 8/12/2021 11:36:55 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Inbound | Normal | Sent | No esta bien eso i am sorry they took everything |
| 8/12/2021 11:37:25 AM | Williamson County Illinois | 17314466960 | JORGE LEAL | 16183648473 | Outbound | Normal | Sent | ahorita que nos dejen salir voy preguntar. Im mad |

WC 625

Jorge Lyt
1286 Wind Crest Dr.
Union City, TN 38261

RECEIVED
UNSEALED

RECEIVED
UNSEALED

RECEIVED
UNSEALED

RECEIVED
UNSEALED

UNITED STATES
POSTAL SERVICE.                                    Retail

**G**   US POSTAGE PAID
**$12.65**   Origin: 38261
07/30/26
4787480676-09

**USPS GROUND ADVANTAGE®**

2 Lb 0.60 Oz
**RDC 01**

C002

SHIP
TO:
750 MISSOURI AVE
EAST SAINT LOUIS IL 62201-2954

**USPS TRACKING® #**

9534 6140 5803 6211 5185 47

Clerk
US District Court
750 Missouri Ave.
East St. Louis, IL 6220

Jorge Loyl
1286 Wind Crest Dr.
Union City, TN 38261

RECEIVED UNSEALED
RECEIVED UNSEALED
RECEIVED UNSEALED
RECEIVED UNSEALED

Clerk
US District Court
750 Missouri Ave.
East St. Louis, IL 6220

**UNITED STATES POSTAL SERVICE.**

Retail

**G**

US POSTAGE PAID

**$12.65**

Origin: 38261
07/30/26
4787480676-09

**USPS GROUND ADVANTAGE®**

2 Lb 0.60 Oz

RDC 01

C002

SHIP TO:
750 MISSOURI AVE
EAST SAINT LOUIS IL 62201-2954

USPS TRACKING® #

9534 6140 5803 6211 5185 47